# Matter of H-L-H- & Z-Y-Z-, Respondents

*Decided March 26, 2010*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Whether an alien has presented sufficient evidence to establish a well-founded fear of persecution is a legal determination that is reviewed de novo by the Board of Immigration Appeals.

(2)  In order to determine, under de novo review, whether specific facts are sufficient to meet a legal standard such as a "well-founded fear," the Board has authority to give different weight to the evidence from that given by the Immigration Judge.

(3)  State Department reports on country conditions are highly probative evidence and are usually the best source of information on conditions in foreign nations.

(4)  The evidence presented by the respondents, considered in light of State Department country reports specific to Fujian Province, failed to establish a reasonable possibility that either respondent would be subject to forced sterilization due to having two children born in the United States or would face penalties or sanctions so severe that they would rise to the level of persecution.

FOR RESPONDENT:  Richard Tarzia, Esquire, Belle Mead, New Jersey

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Michael Horowitz, Assistant Chief Counsel

BEFORE:  Board Panel:  GRANT, MILLER, and MALPHRUS, Board Members.

MILLER, Board Member:

In a decision dated February 12, 2008, an Immigration Judge found the respondents removable on their own admissions and granted their application for asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158 (2006).  The Department of Homeland Security ("DHS") has appealed from that decision.  The DHS's appeal will be sustained, the decision of the

Immigration Judge will be vacated, and the respondents will be ordered removed from the United States.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondents, who are husband and wife, are natives and citizens of China. They have two United States citizen children, a son born in November 2003 and daughter born in March 2007. The respondents do not claim to have suffered past persecution, or even to have been threatened with persecution in China. However, the female respondent asserts that if she is returned to China, and particularly to Huang Qi Town, Lian Jiang County, in Fujian Province, she has a well-founded fear of persecution as a result of the birth of her two children in the United States.[2]

In a hearing before the Immigration Judge, the respondent testified that if she is removed to China, she would be forcibly sterilized and fined by Chinese Government officials because she has two children. In support of her asylum application, the respondent submitted an affidavit from her mother. The respondent's mother stated that upon her inquiry to the family planning office of Huang Qi Town, she was informed that if a Chinese national violates the regulation requiring the insertion of an intrauterine device ("IUD") after the first birth and sterilization after the second birth and then returns to China, she will definitely be sterilized and fined 20,000 yuan. The respondent also included statements from friends and other relatives attesting to this policy.

The Immigration Judge found that the respondent was a credible witness and determined that she had established that the family planning authorities who would have jurisdiction over her, i.e., the family planning authorities of Huang Qi Town, located in Lian Jiang County, Fujian Province, would force her to be sterilized and impose a significant fine on her. The Immigration Judge therefore granted the respondent's application for asylum.

---

[1] The respondents' motion to summarily dismiss the DHS's appeal pursuant to 8 C.F.R. § 1003.1(d)(2)(i)(E) (2010) is denied. The DHS provided a lengthy statement with the Notice of Appeal identifying the factual and legal bases for the appeal in detail. Furthermore, the DHS filed a timely brief in support of the appeal.

[2] The respondents' claim is based on the female respondent's application for relief, and we therefore refer to her when we reference a single respondent. She submitted her asylum application on November 13, 2006. Because the application was filed after May 11, 2005, it is governed by the provisions of the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302 (enacted May 11, 2005). *See Matter of S-B-*, 24 I&N Dec. 42 (BIA 2006). The amendments made by the REAL ID Act to section 208(b)(1)(B) of the Act therefore apply to this case.

Having granted asylum, the Immigration Judge did not address the respondent's requests for withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3) (2006), and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988).

## II. ANALYSIS

Section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42) (2006), includes within the definition of a "refugee" a person who has a well-founded fear that he or she will be forced to undergo involuntary sterilization or will be subject to persecution for failure or refusal to undergo such a procedure or for resistance to a coercive population control program. The DHS challenges the Immigration Judge's determination that a reasonable person in the respondent's circumstances would fear being subjected to a forced sterilization or sanctions rising to the level of persecution upon her return to China.

We review the Immigration Judge's findings of fact, including those relating to credibility, to determine whether they are "clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i) (2010). We review de novo all other questions of law, discretion, and judgment, including the question whether the parties have met the relevant burden of proof. 8 C.F.R. § 1003.1(d)(3)(ii).

The Immigration Judge's favorable credibility determination is not "clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i). However, it remains the respondent's burden to establish that a reasonable person in her circumstances would fear being subjected to a forced sterilization or sanctions rising to the level of persecution upon her return to China. *See Yong Hao Chen v. U.S. INS*, 195 F.3d 198, 204 (4th Cir. 1999) (finding that the alien's fear of persecution based on China's population control policy was not objectively reasonable, because the underlying basis for his fear was "membership in a diffuse class against whom actual persecution" was rare and he failed to show that he and his wife would be individually targeted). Regardless of the policy generally prohibiting the birth of additional children following the birth of a son, to be eligible for relief the respondent must also meet her burden of demonstrating a reasonable possibility that Chinese Government officials would enforce the family planning policy against her through means constituting persecution. *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 142-43 (2d Cir. 2008) (finding no legal error in the Board's three-part inquiry requiring the alien to identify a governmental policy implicated by the births at issue, establish that Chinese Government officials would view the births as a violation of the

policy, and demonstrate a reasonable possibility that such officials would enforce the policy against the alien through means constituting persecution); *Matter of J-H-S-*, 24 I&N Dec. 196 (BIA 2007); *Matter of J-W-S-*, 24 I&N Dec. 185 (BIA 2007).

While the Immigration Judge's findings of fact are reviewed under the "clearly erroneous" standard, the question whether the facts are sufficient to establish that the respondent has a well-founded fear of persecution upon return to China is a legal determination that we review de novo. *Matter of V-K-*, 24 I&N Dec. 500, 501-02 (BIA 2008); 8 C.F.R. § 1003.1(d)(3); *see also, e.g.*, *Cubillos v. Holder*, 565 F.3d 1054, 1058-89 (8th Cir. 2009). Determining whether a fear of what may happen in the future is well founded essentially involves predicting future events, and "it is impossible to declare as 'fact' things that have not yet occurred." *Matter of A-S-B-*, 24 I&N Dec. 493, 498 (BIA 2008).[3] We therefore review de novo the question whether the respondent has carried her burden of establishing a well-founded fear that the family planning policy will be enforced against her through means constituting persecution upon her return to China.

In order to determine, under de novo review, whether specific facts are sufficient to meet a legal standard such as a "well-founded fear," the Board has authority to give different weight to the evidence from that given by the Immigration Judge. *Id.* at 497; *see also Rotinsulu v. Mukasey*, 515 F.3d 68, 72 (1st Cir. 2008) (stating that the regulation prohibiting the Board from engaging in fact-finding does not "restrict the BIA's powers of review, including its power to weigh and evaluate evidence introduced before the IJ"). This authority is critical to permit the Board to determine whether the facts as found by the Immigration Judge meet the relevant legal standard, including circumstances where anecdotal and subjective evidence is presented to undercut more recent evidence from more established and reliable sources. *See Matter of C-C-*, 23 I&N Dec. 899, 903 (BIA 2006) (holding that the State Department documents on country conditions warranted greater weight than an affidavit from an expert witness that was not based on first-hand experience

---

[3] As we observed in *Matter of A-S-B-*, 24 I&N Dec. at 496-97, the Attorney General provided specific examples to explain the Board's scope of review in the Supplementary Information to the 2002 procedural reform regulations. *See* Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54,878, 54,890 (Aug. 26, 2002) (Supplementary Information). Relying on these examples, we noted that "the Immigration Judge's assessment of what happened to an asylum applicant is a factual determination that will be reviewed under the clearly erroneous standard," while the issue "whether the facts demonstrate harm that rises to the level of persecution" is a question that "'will not be limited by the "clearly erroneous" standard.'" *Matter of A-S-B-*, 24 I&N Dec. at 496-97 (quoting 67 Fed. Reg. at 54,890 (Supplementary Information)).

and relied on more dated information about Chinese population control policies). This review authority also promotes consistency in the application of legal standards so that cases with similar facts are generally decided in a like manner.[4]

State Department reports on country conditions, including the *Profiles of Asylum Claims & Country Conditions*, are highly probative evidence and are usually the best source of information on conditions in foreign nations. *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 341-42 (2d Cir. 2006); *Gonahasa v. U.S. INS*, 181 F.3d 538, 542 (4th Cir. 1999); *Matter of V-T-S-*, 21 I&N Dec. 792, 799 (BIA 1997). The reports are accorded "special weight," *Aguilar-Ramos v. Holder*, 594 F3d. 701,705 n.6 (9th Cir. 2010), because they are based on the collective expertise and experience of the Department of State, which "'has diplomatic and consular representatives throughout the world.'" *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d at 341 (quoting *Zamora v. INS*, 534 F.2d 1055, 1062 (2d Cir. 1976)). However, this evidence does not "automatically discredit contrary evidence presented by the applicant," and it is critical to also consider and evaluate "'any contrary or countervailing evidence . . . as well as the particular circumstances of the applicant's case.'" *Alibasic v. Mukasey*, 547 F.3d 78, 87 n.6 (2d Cir. 2008) (quoting *Tian-Yong Chen v. INS*, 359 F.3d 121, 130 (2d Cir. 2004)); *see also, e.g.*, *Krastev v. INS*, 292 F.3d 1268, 1277 (10th Cir. 2002).

We have considered the State Department documents on country conditions along with the particularized evidence presented by the applicant and conclude that the respondent has not carried her burden of establishing a well-founded fear that the family planning policy will be enforced against her through means constituting persecution upon her return to China. *See Qin Wen Zheng v. Gonzales*, 500 F.3d 143, 147 (2d Cir. 2007) (stating that "the BIA does not abuse its discretion in crediting the State Department reports in the face of uncorroborated anecdotal evidence to the contrary"). The State Department explains in its May 2007 *Profile of Asylum Claims and Country Conditions* that "U.S. officials in China are not aware of the alleged official policy, at the national or provincial levels, mandating the sterilization of one partner

---

[4] Any other rule would not be consistent with the Attorney General's conclusion that "the Board is better positioned to resolve issues involving the application of legal standards and the exercise of discretion." *Matter of A-S-B-*, 24 I&N Dec. at 496 (citing 67 Fed. Reg. at 54,890 (Supplementary Information)). Furthermore, it would greatly restrict the Board's ability to review various legal determinations initially made by Immigration Judges, such as whether an Immigration Judge properly found that an applicant failed to present sufficient or persuasive evidence to establish a claim of exceptional and extremely unusual hardship for cancellation of removal under section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (2006). *See Massis v. Mukasey*, 549 F.3d 631, 636 n.6 (4th Cir. 2008); *see also* 67 Fed. Reg. at 54,890 (Supplementary Information).

of couples that have given birth to two children, at least one of whom was born abroad." Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* 29 (May 2007) [hereinafter *2007 Profile*]; *see also Matter of S-Y-G-*, 24 I&N Dec. 247, 255 (BIA 2007). According to the State Department, central government policy prohibits the use of physical coercion to compel persons to submit to abortion or sterilization. *See 2007 Profile*, *supra*, at 24.

Although acknowledging that there were "reportedly" forced sterilizations in Fujian in 2006, the State Department observes that Consulate General officials visiting Fujian have found that coercion through public and other pressure has been used, but they did not find any cases of physical force employed in connection with abortion or sterilization. *Id.* at 26. In interviews with visa applicants from Fujian representing a wide cross-section of society, Consulate General officers have noted that many violators of the one-child policy paid fines, but they found no evidence of forced abortion or property confiscation. *Id.* at 24-25. According to the Fujian Provincial Birth Planning Committee, there have been no cases of forced abortion or sterilization in Fujian in the last 10 years. *Id.* at 24. We find these observations in the State Department reports to be highly probative and reliable evidence of country conditions in Fujian Province. *See Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d at 341-42.

While the respondent has submitted numerous internet and newspaper articles regarding general country conditions and the population control policies in China, this evidence does not establish a policy of forced sterilization of parents who return to China with children who were born outside of that country. *See Matter of J-W-S-*, 24 I&N Dec. at 190. The documents obtained for the respondent from the Hai Xin Street Resident Committee of Huang Qi Town and from the Tong Xin Villager Committee of An Kai Township, both of Lian Jiang County, are entitled to minimal weight. These documents, which were obtained for the purpose of the hearing, are unsigned and unauthenticated and fail to even identify the authors.[5] *See, e.g.*,

---

[5] The regulation governing the authentication of official records and public documents in immigration proceedings at 8 C.F.R. § 1287.6 (2010) does not provide the exclusive means for authenticating documents in immigration proceedings. *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 404 (2d Cir. 2005); *see also, e.g.*, *Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 532-33 (3d Cir. 2004). While asylum applicants cannot always reasonably be expected to have authenticated documents from an alleged persecutor, *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d at 404, the failure to attempt to prove the authenticity of a document through this or any other means is significant. This is particularly true in a case such as this where the applicant's family allegedly sought out the letter from the authorities on the applicant's behalf. The document is not a record of a past event, such

(continued...)

*Song Wang v. Keisler*, 505 F.3d 615, 622-23 (7th Cir. 2007) (noting that it was proper to afford little weight to a certificate from the applicant's village committee stating that he must be sterilized upon return to China on account of his two United States-born children because the certificate was unauthenticated and obtained for the purpose of the hearing); *Qin Wen Zheng v. Gonzales*, 500 F.3d at 149 (finding that the Board did not abuse its discretion in declining to credit a document purportedly sent by local government officials that required the alien to surrender to authorities where the document was questionable on its face and was supported only by a spouse's affidavit). Neither document specifies the penalties for refusing to undergo sterilization following the birth of a second child. Further, the State Department's *2007 Profile* contains a translation of an October 13, 2006, letter from the Fujian Province Population and Family Planning Commission stating that Village Committees are autonomous organizations composed of villagers, which are not authorized to make any decisions pertaining to family planning issues, and that a certificate issued by such a committee should be deemed ineffective. *2007 Profile*, *supra*, app. C, at 61.

Moreover, the letters from relatives and friends submitted by the respondent do not provide substantial support for her contention that she will be subjected to forcible sterilization or sanctions rising to the level of persecution. The authors of the letters are interested witnesses who were not subject to cross-examination. *See Jian Hui Shao v. Mukasey*, 546 F.3d at 160-61, 165; *Gandziami-Mickhuo v. Gonzales*, 445 F.3d 351, 358-59 (4th Cir. 2006); *Xia Yue Chen v. Gonzales*, 434 F.3d 212, 218 (3d Cir. 2005). Even if we accept that the policy in the town to which the respondent intends to return generally calls for sterilization after the birth of two children, the respondent has not established that the treatment she may face if she refuses sterilization would amount to persecution.

The letters from the respondent's uncle and friends report sterilizations that took place several years earlier, from February 1990 to December 2003, and are therefore not current. *Cf. Matter of C-C-*, 23 I&N Dec. at 902 (finding more persuasive the current State Department documents on country conditions, which conflicted with an expert witness' affidavit that was based on information received years earlier). Also, the letters are devoid of any

_____

(...continued)
as a contemporaneously created police report, but is instead a statement from local government officials of what allegedly will happen to the respondent and her husband in the future if they return. *Cf. Matter of Pineda*, 20 I&N Dec. 70, 73 (BIA 1989) (stating that documentary evidence that was created contemporaneous with the events in question is more persuasive than a document that is obtained to provide evidence for an immigration hearing).

detail that would establish that the type and level of "force" used by the authorities was sufficient to constitute a persecutory act. *See Xiu Fen Xia v. Mukasey*, 510 F.3d 162, 166 (2d Cir. 2007) (citing *Matter of T-Z-*, 24 I&N Dec. 163, 169-70 (BIA 2007)). An April 17, 2007, Report of Investigation by the United States Citizenship and Immigration Services ("USCIS") indicates that Chinese nationals who have not obtained permanent or long term residence overseas, or who did not have resident visas for 3 or more years, will be "sanctioned in compliance with the relevant family planning rules and regulations upon returning to mainland China if they have conducted any birth acts in violation of the family planning regulations enforced at the local administrative level with jurisdiction over their residence of household registration in China." However, the report also states that Fujian Province has introduced more than three contraceptive methods to women of childbearing age and that family planning service institutions can provide other appropriate methods to women who are unwilling to use an IUD or undergo sterilization or for whom these methods are not suitable. The requirement to use an IUD and to receive periodic medical examinations would not constitute persecution to the respondent. *Matter of M-F-W- & L-G-*, 24 I&N Dec. 633, 640 (BIA 2008); *see also Xia Fan Huang v. Holder*, 591 F.3d 124 (2d Cir. 2010).

Additionally, the letters do not show that the individuals referenced are similarly situated to the respondent. *See Fen Gui Lin v. Holder*, 588 F.3d 981, 989 (9th Cir. 2009). None of the individuals who provided letters for the respondent claims to have given birth to children in the United States or to know of anyone who has been forcibly sterilized or otherwise subjected to sanctions rising to the level of persecution after having given birth in the United States. In fact, the respondent has not presented any evidence of a Chinese national who has been subjected to forcible sterilization or sanctions rising to the level of persecution after returning to China with two United States citizen children. *See Jian Hui Shao v. Mukasey*, 546 F.3d at 164 (finding it significant that the asylum applicants were unable to point to evidence of any person being forcibly sterilized on removal to China based on having two children).

The State Department's *2007 Profile* indicates that an economic penalty in the form of a social compensation fee may be imposed upon a birth planning violator. *See 2007 Profile*, *supra*, at 27. However, the respondent has not met her burden of establishing that payment of such a fee would put her at such a "severe economic disadvantage" that it would amount to persecution. *Matter of T-Z-*, 24 I&N Dec. at 173. The *2007 Profile* indicates that there is wide variation in the amount of social compensation fees and the severity of hardship they impose for out-of-plan births. It also notes that couples unable to pay the fee immediately may be allowed to pay in installments. *2007 Profile*, *supra*, at 27. The respondent has not shown that she and her husband,

who have lived in the United States for 7 and 10 years, respectively, would be unable to pay a social compensation fee or that its imposition would put them at a severe economic disadvantage. *See Guan Shan Liao v. U.S. Dep't of Justice*, 293 F.3d 61, 70 (2d Cir. 2002).

The respondent has not shown a well-founded fear of persecution for violation of the family planning policy even if she should enter her children into the household registry following her return to China. However, the record does not establish that the respondent would be constrained to enter her two United States citizen children into the household registry. The October 13, 2006, letter from the Fujian Province Population and Family Planning Commission indicates that children born in the United States to a Chinese national will not be counted against the number of children allowed under China's family planning laws if they are not registered as permanent residents. *See 2007 Profile*, *supra*, app. C, at 61.[6]  In this regard, the  USCIS Report of Investigation states that "[a]ccording to the regulations from the competent department of China, any children of Chinese mainland residents who are born in the U.S. are not considered as Chinese mainland residents if they have not gone through the formalities to become Chinese mainland residents" and that such "children who were born abroad will not be counted into the numbers of children the Chinese mainland residents are entitled to have." *See also id.*

The State Department's *2007 Profile* indicates that children without a Chinese household registration (i.e., those who enter and live in China as American citizens rather than as Chinese permanent residents) are not eligible for free public education and other social benefits available to Chinese permanent residents. *Id.* at 30. However, these benefits are available at a higher cost, and many United States citizen children in China attend private schools where their parents pay tuition. The respondent has not shown that having to pay for the education and other social benefits for her two United States citizen children would constitute such a "severe economic disadvantage" that it would amount to persecution. *Matter of T-Z-*, 24 I&N Dec. at 173; *see also Matter of Y-T-L-*, 23 I&N Dec. 601, 606 (BIA 2003).

The evidence presented by the respondent does not establish a reasonable possibility that she would be subject to forced sterilization or would face any penalties or sanctions so severe that they would rise to the level of persecution. This is true even if the respondent should place her children in the household registry following her return to China so that they are included within the number of children allowed under the Chinese family planning policy. *2007 Profile*, *supra*, at 30. The *2007 Profile* indicates that such registration could

---

[6] We note that the USCIS Report of Investigation also refers to the October 13, 2006, letter from the Fujian Province Population and Family Planning Commission and contains a translation of the letter as an exhibit appended to the report.

trigger sanctions and economic penalties under the relevant laws and regulations and that the parents would be expected to conform to the restriction in Chinese law and regulations on future offspring. *Id.* However, the respondent has not established that any such consequences would rise to the level of physical force or other means that would amount to persecution. *See Matter of J-W-S-*, 24 I&N Dec. at 191-94. On balance, the evidence indicates that physical coercion to achieve compliance with family planning goals is uncommon and unsanctioned by China's national laws and that the overall policy is much more heavily reliant on incentives and economic penalties. *See id.* at 191 ("Enforcement efforts resulting in moderate economic impact would not, in general, prove a well-founded fear of future persecution."); *see also Matter of J-H-S-*, 24 I&N Dec. at 200-01. Further, the respondent has not shown that her locality represents a current exception to the general rules in which the Chinese Government relies on a variety of measures short of persecution to enforce its population control policy.

The respondent has not shown that she has a well-founded fear of being subjected to forcible sterilization, or other sanctions rising to the level of persecution, if she is returned to China. She has therefore failed to establish her eligibility for asylum. Because the respondent has not satisfied the lower burden of proof for asylum, it follows that she has not met the higher burden for withholding of removal. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 183 (2d Cir. 2004). Additionally, the record does not reflect that the respondent presented any testimony or evidence or made any arguments before the Immigration Judge establishing her eligibility for protection under the Convention Against Torture. 8 C.F.R. §§ 1208.16, 1208.18 (2010). *See generally Matter of J-F-F-*, 23 I&N Dec. 912 (A.G. 2006). Accordingly, the DHS's appeal is sustained.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The order of the Immigration Judge granting asylum is vacated.

**FURTHER ORDER:** The respondents are ordered removed from the United States to China.