**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2681
_____

JIAN ZUAU ZHENG,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A070-838-800)
Immigration Judge:  Honorable William Strasser

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2012

Before: RENDELL, VANASKIE and GARTH, <u>Circuit</u> Judges

(Opinion filed: March 12, 2012)
_____

OPINION
_____

PER CURIAM

        As the parties are familiar with the background of the case, which we have set

forth previously in <u>Zheng v. Attorney Gen. of the United States</u>, 549 F.3d 260 (3d Cir.

1

2008) ("Zheng I"), and Zheng v. Attorney Gen. of the United States, 396 F. App'x 812 (3d Cir. 2010) ("Zheng II"), we will only briefly summarize the background here (although we will refer to other facts as they become relevant to our analysis).

Essentially, Jian Zhau Zheng, whose exclusion order became final in 1997, sought to reopen his immigration proceedings in the Board of Immigration Appeals ("BIA"). In 2006, he filed his second motion to reopen,[1] which the BIA denied. Zheng then filed a petition for review. We granted the petition and vacated the BIA's order on the basis of a procedural deficiency in the BIA's analysis. In short, and without implying that the BIA came to the wrong result, we held that the matter had to be remanded because the BIA needed to fully consider the evidence Zheng presented. Zheng I, 549 F.3d at 272.

On remand after Zheng I, Zheng submitted additional evidence (14 additional documents) to the BIA. The BIA again denied the motion to reopen. Zheng filed another petition for review, which we also granted. Reviewing the matter, we described the BIA's ruling and stated that it was unclear whether the BIA followed the "directive that it 'must actually consider the evidence and argument that a party presents.'" Zheng II, 396 F. App'x at 814. We further explained:

---

[1]Generally, an alien may file with the BIA one motion to reopen his proceeding and that motion must be filed within 90 days of the date of the final administrative decision. 8 C.F.R. § 1003.2(c)(2). Zheng sought to avoid the time- and number-bars by showing that his motion to reopen was "based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available . . . at the previous hearing[.]" Id. at § 1003.2(c)(3)(ii).

> The BIA's approach is deficient because it completely fails to examine the submitted evidence and to determine whether it supports Zheng's claim that conditions in China have changed. We remanded this case because the BIA did not "discuss most of the evidentiary record[.]" 549 F.3d at 269. The BIA's decision following remand still lacks any reasoned discussion of either the initial submissions from Zheng or the additional fourteen documents submitted on remand. Without a substantive analysis by the BIA of the evidence adduced by Zheng, we are unable to discern its reasons for denying the motion to reopen.

Id. at 815. Stating also that the BIA had not conducted a qualitative assessment of the evidence submitted, as it must to analyze material evidence of changed country conditions, we vacated the BIA's decision. Id. We remanded the matter so that the "BIA may address Zheng's evidence and explain whether that evidence supports his claim of changed country conditions and thereby warrants reopening his exclusion proceeding." Id.

On remand before the BIA, Zheng again submitted additional documents (totaling 192 pages). He provided documents about two individuals who purportedly were sterilized in China after having two children in the United States; more information about Chinese household registration requirements for children born in the United States; and additional State Department and Congressional reports on China. The materials also included a "review and evaluation" of the State Department Report and a packet of cases about forced abortions, infanticide, and other examples of coercive family planning originally collected by an anonymous Chinese national and prepared by the China Aid Association and Women's Rights without Frontiers for a Congressional hearing.

3

The BIA again denied Zheng's motion, this time issuing a seven-page, single-spaced decision to support its ruling that Zheng's evidence was insufficient to establish a material change in the enforcement of the population control policy. The BIA also declined to exercise its authority to reopen the proceedings sua sponte, holding that Zheng had not shown an exceptional situation warranting reopening.

Zheng presents another petition for review. We have jurisdiction under 8 U.S.C. § 1252(a). We review the BIA's order denying the motion to reopen for abuse of discretion. Zheng I, 549 F.3d at 264-65.

On review, we conclude that on this remand, the BIA thoroughly considered the evidence, as we expected, and corrected the procedural deficiency in its analysis that we identified in the earlier decisions in this case. We hold that the BIA's conclusion, based on a full analysis of the evidence, was not an abuse of discretion. [2]

As Zheng argues, the BIA did not discuss every piece of evidence in detail. For instance, the BIA declined to address evidence it had already addressed in earlier precedential decisions (including documents submitted after the first remand, namely the

_____

[2] Zheng does not seem to challenge the BIA's decision not to reopen the proceedings sua sponte. The BIA's decision to decline to exercise its discretion to reopen a case sua sponte is generally unreviewable, see 8 U.S.C. § 1252(a)(2)(B)(ii); Calle-Vujiles v. Ashcroft, 320 F.3d 472, 475 (3d Cir. 2003), although the Court can review the BIA's ruling on whether a petitioner has shown an "exceptional situation" or, stated otherwise, whether a petitioner has established a prima facie case for sua sponte relief. See Cruz v. Att'y Gen., 452 F.3d 240, 250 (3d Cir. 2006). Even if Zheng were to present this type of argument, however, it would be without merit. There is no evidence that the BIA is ignoring a general policy it had established as there was in Cruz. See 452 F. 3d at 246 n.3 & 249-50.

4

1999 Changle City Family Planning Office handbook and opinion, the 2003 Administrative Decision of the Fujian Province Family Planning Committee, as well as the earlier submitted testimony of John Aird).  However, here the BIA incorporated by reference the reasoning in such cases as Matter of S-Y-G-, 24 I. & N. Dec. 247, 252 (BIA 2007), and Matter of J-W-S-, 24 I. & N. Dec. 185, 189-90 (BIA 2007).

The BIA otherwise discussed the other evidence in detail.  It rejected Zheng's personal evidence as unpersuasive for establishing changed country conditions, noting that the portion of his affidavit concerning the enforcement of the family planning laws in China was not based on personal knowledge.  The BIA stated that Zheng had not supported his claims related to forced sterilization of his neighbors in China (or even asserted that the alleged incidents were related to the birth of foreign-born children).  A letter from the Changle City Family Planning Office also did not persuade the BIA on the grounds that it was a photocopy without the name or signature of an official.  The BIA may "properly discount" documents that are not authenticated.  See Chen v. Att'y Gen., --- F.3d ---, No. 09-3459, 2011 U.S. App. LEXIS 5358, at *14 (3d Cir. Mar. 18, 2011).  The BIA further acknowledged that the letter indicated that Zheng would have to undergo the same family planning procedures as a local resident would, but noted that the letter did not specify the penalties for refusing sterilization or demonstrate a reasonable likelihood that he would be sterilized or face any other sanction that would qualify as persecution.

5

The BIA considered the State Department Reports for 2005, 2007, and 2009, and read them to mean that the Chinese government continues its population control policy, with enforcement and penalties varying by region, with reports of sporadic human rights violations by local officials. The BIA noted that violators may have to pay a social compensation fee of varying amounts, but that Zheng did not prove that any such fee imposed on him would be persecutory. The BIA also concluded that the State Department Reports were more reliable than the review and evaluation of them that Zheng submitted, not only because State Department Reports are generally considered highly probative evidence but also because the reviewer did not provide a curriculum vitae, based conclusions in speculation instead of personal knowledge, and demonstrated an unfavorable bias against the State Department and all government agencies. The BIA separately noted that the reviewer conceded that there is no universal consensus on whether forced abortions occur and stated that the review did not purport to address individual claims. State Department Reports may serve as substantial evidence, and the BIA provided a well-reasoned explanation to permissibly credit the Reports over other evidence. See Yu v. Att'y Gen., 513 F.3d 346, 349 (3d Cir. 2008). We have approved of similar conclusions by the BIA based on the 2007 State Department Report in an asylum case brought by a Chinese national from Fujian province who was the mother of two children born in the United States. See Chen, 2011 U.S. App. LEXIS 5358, at *9-10. In Chen, we discussed Matter of H-L-H-, which Zheng tries to distinguish. However, as in

Chen, Matter of H-L-H- "contains a comprehensive discussion that persuasively addresses many of the issues before us." 2011 U.S. App. LEXIS 5358, at *5. In Matter of H-L-H-, the BIA noted that the 2007 State Department Report discussed evidence that there were no cases of forced sterilizations in the ten previous years. 25 I. & N. Dec. 209, 214 (BIA 2010).

The BIA also ruled that neither the Congressional-Executive Commission on China's 2005 Annual Report nor a March 14, 2006 letter from the "Administrative Office of the National Population and Family Planning Committee" (relating to the application of family planning laws to citizens returning from abroad) altered the BIA's assessment, in Matter of J-W-S-, 24 I & N. Dec. 185 (BIA 2007), that children born in the United States are regarded as U.S. citizens and not counted for population control purposes and that there is no national policy of forced sterilization of returning citizens with a second child born outside of China. The packet of cases prepared for a Congressional hearing was described, accurately, as anecdotal evidence that did not convince the BIA that there is no country-wide campaign of forcible sterilization of returning nationals with children.

The BIA also declined to rely on incomplete 2007, 2009, and 2010 Congressional-Executive Commission on China Annual Reports, particularly because it appeared that crucial aspects of the reports, such as the sections about the status of women, were missing. The BIA emphasized that the interference with women's reproductive lives continued, and that it varied by locality. A conclusion that conditions *continued*

7

undermines Zheng's claim of changed circumstances. The BIA additionally noted that the reports, by the references to unspecified "remedial measures" or abortion as an "official policy instrument," did not address the treatment of those with foreign-born children or demonstrate that policy violators would face persecution

The affidavits and statements that Zheng submitted regarding the forced sterilization of parents with foreign-born children were held not to be persuasive. The BIA concluded that two, from Renzum Yuan and Fengchai Chai, were not even affidavits because they were not sworn before someone authorized to administer oaths. The BIA questioned the declarants' identity, their reliability, and the substance of the statements, noting additionally that the affidavits were copies from other cases and supported by unauthenticated documents. Also, Yuan's appeared to have been made for purposes of his own litigation. Discussing the affidavits of Jin Fu Chen and Jiang Zhen Chen, the BIA noted that not only were they also copies from other cases and supported by unauthenticated documents, but also they related to parents of children born in Japan and presented no specific circumstances surrounding the abortions. Other Family Planning documents were similarly questioned as unauthenticated. As noted above, the BIA may accord less weight to unauthenticated documents. See Chen, 2011 U.S. App. LEXIS 5358, at *14.

The BIA ruled that the remaining documents also did not warrant reopening. The 2003 Consular Information Sheet was found not to discuss the population control policy

8

or show that nationals returning to Fujian province with foreign born children would be persecuted. Although the Population and Family Planning Regulation discussed fines and rewards to achieve compliance with the law, it did not describe sanctions amounting to persecution. The testimony of Harry Wu was described as without a clear foundational basis. His testimony, as well as articles in the record, was criticized as not providing information specific to the return of nationals to Fujian province. The BIA discussed the issues of household registration, use of travel documents and the law of entries and exits in China, citizenship issues for foreign-born children of Chinese descent, and sanctions for returning Chinese nationals, and concluded that none of the evidence demonstrated that parents of foreign-born children faced persecution or that the Chinese government has changed the way it treats the parents of foreign born children.

In short, unlike in its earlier rulings in Zheng's case, the BIA considered Zheng's evidence and conducted a case-specific analysis of the evidence, as it must, see Chen, 2011 U.S. App. 5358, at *10, in coming to its conclusion that Zheng did not demonstrate a change in country conditions.[3] The BIA did not abuse its discretion in denying Zheng's motion to reopen. Accordingly, we will deny Zheng's petition for review.

---

[3] We reject Zheng's argument that the BIA misunderstood or mischaracterized the basis for Zheng's motion to reopen.