**IMG-092**                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1480
_____

LIAN ZHANG,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A78-745-724)
Immigration Judge:  Honorable Eugene Puglisi
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 11, 2012
Before:  RENDELL, VANASKIE AND GARTH, Circuit Judges

(Opinion filed: July 16, 2012)
_____

OPINION
_____

PER CURIAM

Lian Zhang, a citizen of the People's Republic of China, entered the United States

in 2000.  He appeared before an Immigration Judge ("IJ") and conceded that he was

removable for having entered the country without being admitted or paroled.  See

Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i)]. Zhang filed an application for asylum and withholding of removal, alleging persecution under China's coercive population control policies. Following a merits hearing in 2001, the IJ denied relief. In 2002, the Board of Immigration Appeals ("BIA") affirmed without opinion.

In July 2011, Zhang filed a motion to reopen, asserting that he converted to Christianity in 2009 and feared that he would be persecuted in China because of his religious beliefs. The BIA concluded that Zhang's conversion was a change in personal circumstances, rather than a change in conditions in China that would overcome the time limitations for filing a motion to reopen. Further, the Board considered evidence that Zhang had submitted with his motion to reopen, which included affidavits from himself, his wife, and his uncle, as well as a human rights organization report concerning religious persecution in China. The Board ultimately concluded that while "[t]here is no dispute that some Christians in China have faced harassment, repression, and even persecution, . . . that has been true continuously since the time of [Zhang's] hearing and for many years previously." Accordingly, the BIA denied the motion to reopen. Zhang filed a counseled petition for review.

We have jurisdiction pursuant to INA § 242(a) [8 U.S.C. § 1252(a)], and review the BIA's denial of a motion to reopen for abuse of discretion. Patel v. Att'y Gen., 639 F.3d 649, 651 (3d Cir. 2011). Under this standard, the BIA's decision may be reversed only if it is "arbitrary, irrational, or contrary to law." Sevoian v. Ashcroft, 290 F.3d 166,

174 (3d Cir. 2002). An alien generally may file only one motion to reopen and must file it with the BIA "no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2). The time and number requirements do not apply to motions that rely on evidence of "changed country conditions," INA § 240(c)(7)(C)(ii) [8 U.S.C. § 1229a(c)(7)(C)(ii)], or "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii).

Zhang's motion to reopen, filed more than nine years after the BIA entered the final removal order, was clearly untimely. The BIA also properly held that Zhang's conversion to Christianity was a change in his personal circumstances, not a change in country conditions that would support reopening. Liu v. Att'y Gen., 555 F.3d 145, 150-51 (3d Cir. 2009). We have recognized, however, that an alien who has been ordered removed can file an untimely or successive asylum application based on changed personal conditions if the alien can also show changed country conditions in the motion to reopen. Id. at 150. Thus, Zhang would be eligible to file a second asylum application in reopened proceedings based on his Christian faith, if he is able to establish relevant changed country conditions since the time of his initial asylum proceedings. Filja v. Gonzales, 447 F.3d 241, 251, 252 (3d Cir. 2006) (holding that change in country conditions is measured from time of proceedings before IJ).

Zhang argued before the BIA that there has been an increase in human rights

3

abuses committed against members of unregistered churches in China. In support of this contention, Zhang submitted a personal affidavit and statements from his wife and uncle. Those submissions described incidents in which Chinese authorities (1) searched his families' homes and confiscated religious materials that Zhang had sent to them; (2) fined and threatened his family; and (3) interrogated his uncle, who had returned to China for a visit, about Zhang's whereabouts. Administrative Record ("A.R.") 25-27, 33, 38. The BIA stated that these documents were entitled to "only minimal weight" because neither Zhang nor his wife witnessed these incidents, because the statements did not provide specifics about the threats to Zhang, and because they were provided by family members for the purpose of the removal proceedings. The BIA's conclusion relied in part on In re H-L-H-, 25 I. & N. Dec. 209 (BIA 2010). In that case, like here, the Board concluded that documents submitted by asylum applicants were entitled to minimal weight because they were "obtained for the purpose of the hearing." Id. at 214. In H-L-H-, however, the documents were also unsigned, unauthenticated, and failed to identify the authors. Id. Those weaknesses do not exist in Zhang's affidavits. Nevertheless, we conclude that the BIA did not abuse its discretion in declining to fully credit this evidence. Chen v. Gonzales, 434 F.3d 212, 218 (3d Cir. 2005) (noting that only corroboration was a letter from a family member who did not witness incident and who was not subject to cross examination).

Moreover, even if the affidavits could be credited, they are insufficient to establish changed country conditions in China. The affidavits' largely anecdotal descriptions of

religious persecution do not demonstrate that conditions had worsened in China for Christians since the time of Zhang's merits hearing in 2001. See Shardar v. Att'y Gen., 503 F.3d 308, 316 (3d Cir. 2007) (holding that an asylum applicant must make a showing of a particularized threat of persecution).

In addition, we agree that the documentary evidence submitted with Zhang's motion to reopen failed to demonstrate that conditions concerning religious persecution in China have materially changed since the time of Zhang's hearing. Zhang's motion to reopen relied primarily on an Annual Report from the China Aid Association ("the Report"), which stated that "[a]s it has in each of the previous five years, church persecution continued to escalate in 2010." Importantly, however, evidence in the record from Zhang's 2001 merits hearing suggested that harassment and repression of unregistered churches were already prevalent. For example, the 1998 State Department Profile of Asylum Claims and Conditions in China ("the Profile") indicated that "[u]nregistered religious activity is illegal and is a punishable offense," that since 1994 the police have stepped up a campaign to require all religious groups to register, and that the "Government stepped up the pressure on Christians in both the countryside and the cities."

The China Aid Association Report provided statistics concerning an overall increase in religious persecution in China. In particular, the Report noted that "[i]n addition to continuing with the 2008 and 2009 practice of 'targeting house church leaders and churches in urban areas,' . . . new trends appeared in the persecution of Christian

5

churches in mainland China." For instance, "beginning in the latter half of 2010, the government began to circumvent regular legal means and instead began to allow law enforcement officers to wreak physical and mental havoc on the targets of the persecution rather than punishing them through legal and accepted methods." Significantly, however, Fujian Province, where Zhang's family lives, was not listed among the provinces where the most severe persecution occurred. Indeed, it appears that in Fujian Province there was one person detained and ten people persecuted during the reporting period. This is relevant because both the Profile and Report suggest that the frequency and severity of religious persecution varies across China. See Profile, A.R. 156 (stating that the "level of surveillance and harassment of religious groups varies from region to region and is largely dependent upon the local cadre in charge of religious affairs."); Report, A.R. 60-76 (describing incidents based on their location).

Moreover, the Report does not contradict the Profile's conclusion that church *leaders*, rather than church *members* (like Zhang), are targeted for persecution. See Profile, A.R. 156 (indicating that "[l]eaders of [underground religious] groups were targets of harassment, have been detained for lengthy investigations, and in some cases churches−or church property−were destroyed."); Report, A.R. 54 (describing "[t]argeting house church leaders" as a "major characteristic[] of persecution in 2010."). Finally, we reject Zhang's assertion that the Board failed to adequately address the evidence he submitted in support of his motion to reopen. While the BIA must consider the evidence presented, it need not expressly parse each piece of evidence submitted in its opinion.

6

<u>Zheng v. Att'y Gen.</u>, 549 F.3d 260, 268 (3d Cir. 2008) (citing <u>Wang v. BIA</u>, 437 F.3d 270, 275 (2d Cir. 2006)).

For the foregoing reasons, we conclude that Zhang failed to show that conditions for Christians in Fujian Province have materially changed since the time of his 2001 merits hearing.  Accordingly, we will deny the petition for review.  We also deny as moot the Government's motion to summarily deny the petition for review.