NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2568
_____

LING HUANG,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A078-692-256)
Immigration Judge:  Honorable Eugene Pugliese
_____

Submitted Under Third Circuit LAR 34.1(a)
March 21, 2013
_____

Before: FUENTES, CHAGARES and BARRY, Circuit Judges

(Opinion Filed: May 2, 2013)
_____

OPINION
_____

BARRY, Circuit Judge

        Petitioner, Ling Huang, a native and citizen of China, petitions for review of an

order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's

("IJ") denial of her application for asylum, withholding of removal, and protection under

the Convention Against Torture Act ("CAT"). For the following reasons, we will deny the petition.

## I.

Ling entered the United States on February 5, 2001 as a visitor for pleasure. She was authorized to remain in the country until August 4, 2001, but failed to leave as required. The Department of Homeland Security ("DHS") served Huang with a Notice to Appear on November 27, 2007, which alleged that she was removable as a non-immigrant who remained in the United States for a time longer than permitted, in violation of section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. §1227(a)(1)(B).

Huang filed an application for asylum, withholding of removal, and protection under the CAT on December 3, 2007, claiming that she would be persecuted in China because she gave birth to two children in the United States and would be subject to forced sterilization. The IJ denied her application on April 16, 2008, finding that she had failed to establish the existence of a national policy in China of requiring forced sterilization of a parent who returns with a second child born outside of China. Huang appealed the decision to the BIA, submitting additional documentary evidence in support of her family planning policy claim. On August 26, 2009, the BIA remanded Huang's case to the IJ to consider evidence in support of her claim that the IJ failed to explicitly address, and to consider the new evidence submitted by her.

At the September 14, 2010 hearing before a new IJ, Huang reiterated her fears of

China's family planning policy. She also testified that she was afraid to return to China in light of her recent conversion to Christianity, which she had preached to her friends and family in China. The IJ issued an oral decision denying Huang's application, incorporating the findings of the previous decision, and declining to accord significant weight to Huang's additional documentation in support of her family planning claim because it was unverified, appeared to be from the internet, did not appear legitimate, and otherwise failed to address Huang's specific circumstances. The IJ further found that Huang's testimony regarding her recent conversion to Christianity was not credible. Not only did the IJ find the timing suspicious—Huang converted only after her case was remanded by the BIA—but the IJ also considered Huang's demeanor unconvincing, concluding that her voice, emotion, and facial expression failed to evince sincerely held religious beliefs. The IJ also found Huang's story as to how she found Christianity nonsensical and unpersuasive.

On May 3, 2012, the BIA dismissed Huang's appeal, finding that the IJ's adverse credibility determination was not clearly erroneous and that Huang failed to provide sufficiently reliable and specific evidence to establish her family planning policy claim. The BIA also agreed that Huang failed to provide sufficient corroborating evidence or testimony regarding the sincerity of her recent conversion. Accordingly, the BIA concluded that Huang failed to meet her burden for asylum, withholding of removal, or protection under the CAT.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA

adopts the findings of the IJ but also engages in a discussion of various issues, we review the decisions of both the IJ and the BIA. *Sukwanputra v. Gonzales*, 434 F.3d 627, 631 (3d Cir. 2006).

## II.

An alien may qualify for political asylum if he or she can demonstrate an unwillingness or inability to return to his or her homeland "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Withholding of removal may be granted upon a showing that it is more likely than not that the applicant will be subjected to persecution if he or she is deported. *Toure v. Att'y Gen.*, 443 F.3d 310, 317 (3d Cir. 2006). To qualify for relief under the CAT, the applicant must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)). Each ground for relief requires, at a minimum, credible testimony. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

We review for substantial evidence, which requires us to examine the IJ's and the BIA's findings, including those of adverse credibility, to determine whether they are "supported by evidence that a reasonable mind would find adequate." *Dia v. Ashcroft,* 353 F.3d 228, 247-49 (3d Cir. 2003) (*en banc*). We may reverse a finding only when "no reasonable fact finder could make that finding on the administrative record." *Id.* at 249. Huang argues that the findings of the IJ and the BIA are not supported by substantial

4

evidence. We disagree.

First, the BIA's decision to affirm the IJ's adverse credibility determination regarding Huang's newfound Christianity was supported by substantial evidence. "The internal consistency of a witness's testimony, its consistency with other testimony, its inherent (im)probability, as well as the witness's tone and demeanor are important factors in determining credibility." *Chen v. Gonzales*, 434 F.3d 212, 220 (3d Cir. 2005). Huang testified that she became a Christian in February 2010, only after her case had been remanded by the BIA, exceedingly late in her removal proceedings. While perhaps not dispositive, the IJ's skepticism as to the timing was confirmed by Huang's confusing and nonspecific testimony regarding the conversion itself. Huang testified that her conversion began because of the death-bed conversion of her employer. After being asked several times to explain specifically how her employer's death affected her religious beliefs and giving unresponsive answers, Huang finally stated that he appeared happier after he had accepted his death. Other than this vague and unverified testimony regarding the death of her employer, Huang was unable to give any rationale for her well-timed conversion and subsequent proselytizing to family and friends in China.

In addition, the IJ and BIA appropriately considered Huang's demeanor when testifying about her religious beliefs, which is "often a critical factor in determining [a witness's] veracity." *Dia*, 353 F.3d at 252 n.23 (internal quotations omitted). Because an IJ is "uniquely qualified to decide whether an alien's testimony has about it the ring of truth," *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003), we must accord the

5

IJ's personal observations of Huang's demeanor "an even greater degree of deference." *Dia*, 353 F.3d at 252 n.23. While credibility determinations must be made independent of whether the applicant has provided evidence to corroborate his or her claim, *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001), in cases such as this where the IJ has valid reasons to question the truth of the applicant's testimony, the IJ may reasonably require the applicant to corroborate his or her testimony. Huang failed to do so. The IJ's and BIA's decision regarding Huang's fear of religious persecution was therefore supported by substantial evidence.

Huang also contends that the IJ and the BIA erred in determining that she did not have a well-founded fear of persecution based upon the birth of her two U.S.-born children and failed to give sufficient weight to particularized evidence regarding the family planning policy in her hometown. We have previously addressed the issues raised by Huang, most recently in *Chen v. Attorney General*, 676 F.3d 112 (3d Cir. 2011). As here, petitioners in *Chen* were natives and citizens of China from the Fujian Province who had two United States citizen children and claimed that the female petitioner had a well-founded fear of forcible sterilization. Citing the BIA's "comprehensive discussion" of a similar claim in *In re H-L-H & Z-Y-Z*, 25 I. & N. Dec. 20 (BIA 2010), we acknowledged that "State Department reports on country conditions, including the *Profiles of Asylum Claims & Country Conditions*, are 'highly probative evidence and are usually the best source of information on conditions in foreign nations.'" *Chen*, 676 F.3d at 113 (quoting *In re H-L-H & Z-Y-Z*, 25 I. & N. Dec. at 213). Considering the same

6

2007 State Department report on country conditions in the instant record, the BIA concluded that "physical coercion to achieve compliance with family planning goals is uncommon and unsanctioned by China's national laws and that the overall policy is much more heavily reliant on incentives and economic penalties." *Id.* at 115 (quoting *In re H-L-H & Z-Y-Z*, 25 I. & N. Dec at 218). We find that the BIA, and the IJ before it, did not err in concluding that Huang, who presented much of the same documentary evidence as at issue in *Chen* and *In re H-L-H & Z-Y-Z*, does not have a well-founded fear of future persecution based on her fear of forcible sterilization, and correctly concluded that the denial of Huang's application was supported by substantial evidence.

Huang argues that the IJ and BIA failed to give sufficient weight to additional, *particularized* evidence Huang submitted in support of her application, including letters and certificates from family members describing their own sterilizations, testimonials from other parents of foreign-born children, and statements from her local Village Council. Aside from being prepared for the purpose of the instant proceedings by interested witnesses, the letters from family members describing their own forced sterilizations fail to address the particular concern articulated here: a woman with United States citizen children returning to China. The Village Council documents and an internet document titled the "Fujian Province Population and Family Planning Committee's answers to the inquiry made by a Chinese citizen who gave birth to children overseas," are unauthenticated documents that provide no information from which the IJ or the BIA could assess their validity. *See Chen*, 676 F.3d at 117 (finding that BIA and IJ

7

"properly discounted" similar unauthenticated document provided by petitioners'

"Village Committee"). Because the evidence submitted by Huang was either

unauthenticated, or failed to address Huang's specific situation, the BIA and IJ did not err

in according it little weight. Accordingly, we find that no reasonable factfinder would be

compelled to reach a conclusion different than that reached by the BIA.

Having failed to establish her eligibility for asylum, the BIA also correctly found

that Huang did not satisfy the higher burden required for withholding of removal. *Chen*

*v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004). Further, having failed to demonstrate that

it is more likely than not that she would be subject to future religious prosecution or

forcibly sterilized if removed to China, Huang is not entitled to relief under the CAT.

*Sevoian*, 290 F.3d at 174-75.

### III.

We will deny the petition for review.