**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-1047 and 16-2581
_____

DELON LUCIUS LANCASTER,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of a Decision of the Board of Immigration Appeals
(No. A039-060-369)

Immigration Judge: Quynh V. Bain
_____

Argued: May 11, 2017
_____

Before: AMBRO, RESTREPO and COWEN, *Circuit Judges*.

(Filed: June 1, 2017)

Michael S. Doluisio
Ryan M. Moore
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

Kimberly Cullen, Law Student      [ARGUED]
University of Pennsylvania School of Law
3400 Chestnut Street
Philadelphia, PA 19104
        *Pro Bono Counsel for Petitioner*

Joyce R. Branda
Cindy S. Ferrier
Surell Brady
Timothy G. Hayes   [ARGUED]
Office of Immigration Litigation
Civil Division, United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
        *Counsel for Respondent*

———————

OPINION[*]

———————

RESTREPO, *Circuit Judge*.

Petitioner Delon Lancaster appeals from a decision of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ's) order of removal. We will deny Lancaster's petition for review.[1]

**I**

Lancaster, a native of Guyana, was admitted to the United States as a lawful permanent resident at the age of six in 1985. In 2004, he pled guilty to conspiracy to commit armed bank robbery and to using and carrying a firearm in a bank robbery conspiracy, 18 U.S.C. §§ 371, 924(c). He was sentenced to 161 months' incarceration. These convictions rendered him removable from the United States. Lancaster sought deferral of removal under the United Nations Convention Against Torture and Other

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Lancaster also filed a petition for review of the BIA's denial of his motion to reopen, but raises no claims on appeal regarding this motion. We will, therefore, dismiss this petition for review.

2

Cruel, Inhuman or Degrading Treatment or Punishment (CAT). S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85. He asserted that he "is more likely than not to be tortured" if removed to Guyana because he is gay. 8 C.F.R. § 1208.17(a).[2]

At a hearing before the IJ, Lancaster submitted three letters to support the contention that he will be tortured if returned to Guyana. His aunt, who lives in Guyana, wrote that Lancaster's father told "everyone" that Lancaster is gay and that "they are going to 'kill'" him. App. 372. One of Lancaster's cousins, who lives in the United States, wrote that another cousin who is a gang member in Guyana said that he will kill Lancaster because he is gay. Another cousin, who also lives in the United States, wrote that Lancaster "wouldn't survive in Guyana." App. 370.

Lancaster testified similarly that his "family" informed him that if he returns to Guyana he will be killed because of his sexual orientation. App. 285. The IJ questioned him, and some of these questions gave rise to a claim of bias before the BIA and this Court. Specifically, the IJ asked Lancaster whether he could avoid harm in Guyana by either concealing his sexual orientation or not having sex with men.

The IJ denied Lancaster's application for deferral of removal under CAT. She gave several independent reasons for denying relief. Among other things, she found that Lancaster's testimony that he will be harmed in Guyana was "equivocal at best or

---

[2] An immigrant is entitled to deferral of removal under CAT if he establishes that he "is more likely than not to be tortured" in the country of removal. 8 C.F.R. § 1208.17(a). Torture is defined as an act "by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

speculative." App. 237. In addition, Lancaster could relocate within Guyana to avoid harm, and he did not demonstrate that he will be tortured with the government's acquiescence.

Regarding Lancaster's letters, the IJ referred to each of them in her opinion and explained, albeit briefly, how they related to Lancaster's testimony. The IJ also noted that she considered all of the documents in evidence.[3] The IJ stated that she gave "less weight to the letters from the relatives in Guyana because they were not available for examination in court." App. 235.[4]

Lancaster filed a *pro se* appeal to the BIA, which dismissed the appeal. Like the IJ, the BIA found that Lancaster's claim that he will be harmed in Guyana rested "on a series of suppositions which did not establish a clear probability of torture"; that Lancaster could relocate within Guyana to avoid harm; and that he had not proven government acquiescence. App. 46. Regarding the IJ's treatment of Lancaster's letters, the BIA found that "[t]hough the Immigration Judge considered the letters from the respondent's family members as to the harm that the respondent would face upon removal to Guyana, she properly accorded them limited weight, as they were from interested witnesses not subject to cross-examination." App. 47 (citing *In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 215 (BIA 2010), *rev'd on other grounds by Hui Lin Huang*

---

[3] In addition to the letters, the IJ considered reports of country conditions in Guyana. Given our resolution of Lancaster's claims, these reports are not at issue.

[4] We will assume the IJ gave all of Lancaster's letters "less weight," including those from family members in the United States. App. 235.

*v. Holder*, 677 F.3d 130 (2d Cir. 2012)). The BIA also rejected Lancaster's claim of IJ bias. Lancaster filed this petition for review and we appointed counsel.

## II

We have jurisdiction under 8 U.S.C. § 1252(a) to review the BIA's final order of removal. As the BIA issued its own decision, we review that decision and not the decision of the IJ. *Kaplun v. Att'y Gen.*, 602 F.3d 260, 265 (3d Cir. 2010). We review questions of law and constitutional claims *de novo*. *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017); *Abulashvili v. Att'y Gen.*, 663 F.3d 197, 207 (3d Cir. 2011).

Because Lancaster is subject to removal based on an aggravated felony, we may review only constitutional claims or questions of law. 8 U.S.C. §§ 1252(a)(2)(C), (D). Our Section 1252(a)(2)(D) jurisdiction encompasses both of Lancaster's claims. In his first claim, Lancaster asserts that the BIA misapplied its own precedent. This is a question of law. *See Kaplun*, 602 F.3d at 267 (reviewing claim raised by petitioner convicted of an aggravated felony that the BIA's decision ran "contrary to BIA precedent"); *see also Avila-Ramirez v. Holder*, 764 F.3d 717, 722 (7th Cir. 2014) (citation omitted) (stating that under Section 1252(a)(2)(D) "[l]egal questions include . . . claims that the BIA misread its own precedent"). In his second claim, Lancaster asserts that he was deprived of his due process right to a fair hearing—a constitutional claim. *See*, *e.g.*, *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008).

## III

## A

As noted, Lancaster first asserts that the BIA misapplied its precedent in affirming the IJ's decision to give his letters "less weight." App. 235. While we agree with Lancaster's interpretation of the relevant BIA precedent, we conclude that the BIA did not misapply that precedent to his case. Therefore, we will deny the petition for review on this claim.

The BIA precedent at issue is *In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 215 (BIA 2010), in which the BIA found that letters from friends and relatives did not provide substantial support for a petitioner. In reaching this conclusion, the BIA took into account the fact that "[t]he authors of the letters are interested witnesses who were not subject to cross-examination." *Id.* at 215. The BIA, however, did not stop there. It went on to address the content of the letters and to explain why they did not support the petitioner's claim—because they were not current, lacked detail and were not specific to the petitioner's circumstances. *Id.* at 215-16.

We agree with Lancaster that *In re H-L-H- & Z-Y-Z-* does not permit an IJ to give letters "less weight," without regard to their content, solely because the authors are interested parties not subject to cross-examination. Such letters are "entitled, at the very least, to be evaluated for their evidentiary value." *Zhang v. Holder*, 702 F.3d 878, 881 (6th Cir. 2012) (citing *In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. at 215-16). A court must evaluate the content of a petitioner's letters even if they were written by interested parties

6

"for the express purpose of supporting" the petitioner. *Id.* at 882; *see also Uwineza v. Holder*, 781 F.3d 797, 799 (6th Cir. 2015) (same).

Nevertheless, we conclude that the BIA properly applied *In re H-L-H- & Z-Y-Z-* to Lancaster's case. The BIA did not sanction the rejection of Lancaster's letters without regard to their content. Rather, it affirmed the IJ's treatment of the letters only after finding that the "Immigration Judge considered the letters from the respondent's family members as to the harm that the respondent would face upon removal to Guyana." App. 47. The material that the IJ considered—the "harm that the respondent would face upon removal to Guyana"—was the content of the letters. *Id.* As such, we are satisfied that the BIA properly applied *In re H-L-H- & Z-Y-Z-*, even if its explanation of this precedent could have been more robust.

**B**

Lancaster further asserts that he was deprived of his right to due process because the IJ was biased against him on account of his sexual orientation. The BIA rejected this claim. We are constrained to deny the petition for review.

Due process provides that a petitioner may not be "deprived of his interests" absent "a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Wang v. Att'y Gen.*, 423 F.3d 260, 269 (3d Cir. 2005) (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)). The prohibition on IJ bias includes both actual bias and the appearance of bias. *Id.*

Lancaster asserts that the IJ exhibited bias by asking whether he could avoid harm in Guyana by concealing his sexual orientation or not having sex with men. We do not

7

condone these questions or suggest that they could never give rise to a due process violation. As the Supreme Court has stated, "[w]hen sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring. The liberty protected by the Constitution allows homosexual persons the right to make this choice." *Lawrence v. Texas*, 539 U.S. 558, 567 (2003); *see also Obergefell v. Hodges*, 135 S.Ct. 2584, 2596 (2015) (recognizing that "sexual orientation is both a normal expression of human sexuality and immutable"). However, we will deny Lancaster's bias claim for the reasons given in *Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003). As in *Abdulrahman*, the IJ did ask questions that suggested "problematic generalized assertions of her own." *Id.* But these questions did not rise to the level of a constitutional violation because "in the context of the record as a whole there is insufficient evidence to conclude that the overall proceedings were biased in violation of [Lancaster]'s right to due process." *Id.*

**IV**

For the foregoing reasons, we will deny the petition for review.[5]

---

[5] We also express our gratitude to pro bono counsel for their excellent briefing and argument in this matter.

8