**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3252
_____

YAN YING NI,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A077-282-988)
Immigration Judge: Donald Vincent Ferlise
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 2, 2012

Before:  FISHER, WEIS and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 10, 2012)
_____

OPINION
_____

PER CURIAM.

Yan Ying Ni ("Ni") petitions for review of the Board of Immigration Appeals'

final order of removal.  For the reasons that follow, we will deny the petition for review.

1

Ni, a native and citizen of China, entered the United States without a valid entry document on July 14, 1999. She sought asylum, claiming persecution on the basis of her parents' Christian religion. Her application for asylum, withholding of removal, and for protection under the Convention Against Torture was denied by an Immigration Judge after a merits hearing on May 27, 2005. The Board of Immigration Appeals adopted and affirmed the IJ's decision on December 15, 2006, except with respect to the IJ's finding that Ni's application was frivolous. We denied Ni's petition for review in Ni v. Att'y Gen. of U.S., 293 Fed. Appx. 966 (3d Cir. 2008). Ni gave birth to two children in the United States during the original proceedings before the agency: a girl on June 4, 2000 and a boy on July 4, 2002.

At issue now, on February 7, 2011, more than four years after the Board's final order of removal, Ni filed an untimely motion to reopen with the Board, in which she claimed that the Chinese government had increased the enforcement of its population control policies in her home locale of Guantou Town, Fujian Province, since her merits hearing, warranting an exception to the filing deadline for motions to reopen. Ni sought asylum based on her opposition to China's one-child policy. Ni argued that, beginning in 2007, Fujian Province officials imposed new family planning targets and quotas throughout the Province. Pressure on local officials to meet predetermined targets and quotas, she argued, invariably leads to coercive enforcement of family planning laws, including involuntary sterilization. Ni feared that she would be forcibly sterilized in China because she is in violation of China's one-child policy.

2

In support of her claim, Ni submitted numerous exhibits, including, in particular, the "Eleventh Five-Year" Population and Family Planning Special Regulations of Fujian Province; a Notice from her Village Committee; affidavits from her father, and a friend and cousin; the 2007 United States Department of State Profile of Asylum Claims and Country Conditions for China ("2007 Profile"); a report by Dr. Flora Sapio of Julius-Maximilians University in Wurzburg, Germany, which concluded that the 2007 Profile was deficient, unreliable and not balanced; and a portion of the 2009 Annual Report of the Congressional-Executive Commission on China, which concludes that persecutory enforcement measures including forced abortions and involuntary sterilization continued to be commonplace in Fujian Province in 2009. The motion to reopen was opposed by the Department of Homeland Security.

On July 20, 2011, the Board denied Ni's motion to reopen as untimely filed, concluding that the exception to the time requirement invoked by Ni did not apply in her case. With respect to her evidence of worsening conditions in China with regard to family planning enforcement, the Board found that Ni's evidence was insufficient because some documents she submitted were not authenticated as required by 8 C.F.R. § 1287.6 or in any manner; some documents were not new or previously unavailable; some documents were relevant only to towns other than Guantou Town; and none of the documents indicated that Ni would be subjected to involuntary sterilization or economic harm amounting to persecution if she returned to Guantou Town. The Board found evidence in the 2007 Profile that China regards a child of Chinese nationals who was born abroad as a Chinese national, but that same 2007 Profile, which was a superior

3

source of information on conditions in China, did not establish that Ni would be subjected to involuntary sterilization. In addition, Ni's cousin and friend were not similarly situated to Ni because they gave birth to their children in China, not the United States. The Board found that Dr. Sapio was not an expert on the 2007 Profile, and that her report did not establish worsening conditions in China, only that China continues to enforce its one-child policy; and the Board declined to give much weight to the Guantou Township Village Committee's Notice. Last, the Board noted that the birth of Ni's two children was a change in personal circumstances, not a change in country conditions, 8 C.F.R. § 1003.2(c)(3)(ii).

Ni timely petitions for review of the Board's decision. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). We review the Board's denial of a motion to reopen for abuse of discretion. INS v. Abudu, 485 U.S. 94, 105 (1988). Under this deferential standard of review, we will not disturb the Board's decision unless it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). We uphold the Board's factual determinations underlying the denial of the motion to reopen if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Zheng v. Att'y Gen. of the U.S., 549 F.3d 260, 266 (3d Cir. 2008) (quoting Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). Put another way, such determinations must be upheld unless the evidence presented would compel a reasonable factfinder to reach a contrary result. 8 U.S.C. § 1252(b)(4)(B); Guo, 386 F.3d at 561.

We will deny the petition for review. Although a motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened," 8 C.F.R. § 1003.2(c)(2), this time limitation does not apply if the alien seeks reopening "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). See also 8 U.S.C. § 1229a(c)(7)(C)(ii). Because Ni's motion to reopen was not filed within 90 days of the Board's December, 2006 decision, it had to be based on material, previously unavailable evidence of worsening conditions in China with respect to enforcement of its one-child policy for Chinese nationals who have returned to China with two children born in the United States.

We conclude that the Board's findings concerning Ni's country conditions evidence are supported by substantial evidence, Zheng, 549 F.3d at 266; Elias-Zacarias, 502 U.S. at 48, and that the Board did not abuse its discretion in determining that Ni did not qualify for the changed country conditions exception to the time requirement for filing a motion to reopen, see Abudu, 485 U.S. at 105; Guo, 386 F.3d at 562. Just as the Board concluded, the evidence Ni submitted with her motion to reopen did not provide a reliable or sufficient basis for concluding that there has been a worsening of China's population control enforcement policies since Ni's merits hearing in May, 2005, or that she will be subjected to involuntary sterilization upon her return to China. For example, the Fujian Province "Eleventh Five-Year" Population and Family Planning Special

5

Regulations, show *continuing* efforts to control population increases, but do not show *increased* use of involuntary sterilization or economic punishments that rise to the level of persecution. A.R. 332-33. Moreover, this is not a case in which the agency ignored evidence favorable to Ni. See generally Huang v. Att'y Gen. of U.S., 620 F.3d 372, 388 (3d Cir. 2010).

In her brief, Ni has specifically challenged only the Board's findings regarding her Village Committee Notice, A.R. 112, her father's affidavit, Dr. Sapio's report on the 2007 Profile, and the 2009 Congressional-Executive Commission on China report, A.R. 145-54. Accordingly, we will address only these exhibits. None of these items are sufficiently persuasive to compel a reasonable factfinder to reach a result contrary to that of the Board's in Ni's case. 8 U.S.C. § 1252(b)(4)(B); Guo, 386 F.3d at 561. Ni argues that the Board failed to consider her father's affidavit and that it was sufficient to authenticate the Village Committee Notice. She argues that the Board erred in failing to give the Notice any weight merely because it was not authenticated. See Petitioner's Brief, at 17-22. We disagree. The Notice was not authenticated in accordance with 8 C.F.R. § 1287.6(b), and thus we consider whether it was authenticated in accordance with our more lenient precedent, see Leia v. Ashcroft, 393 F.3d 427, 434 (3d Cir. 2005). In the affidavit Ni's father explains that he sought information from the Village Committee and received the Notice in response. A.R. 106.

The Board specifically referenced in its decision that Ni had submitted an affidavit from her father, see Zheng, 549 F.3d at 268 (Board has duty to expressly consider any country conditions evidence submitted by the applicant that materially bears on her

6

claim), but it is true that the Board did not specifically address whether the affidavit would suffice to authenticate the Notice, see generally Chen v. Att'y Gen. of the U.S., --- F.3d --- , 2011 WL 923353, at * 4 (3d Cir. 2011) (Board "properly observed that the Village Committee document had not been authenticated by any means at all, such as an affidavit from Ms. Chen's mother as to how the document was obtained"). After reviewing Ni's motion to reopen, we conclude that this is likely because Ni's authenticity argument in her motion to reopen made no mention of her father's affidavit. The motion to reopen devotes three full pages to the authenticity of the exhibits Ni offered, A.R. 59-62, observing that many reports and articles came from publically accessible government websites, or were specifically authenticated by Dr. Sapio in her report, see id. at 59-61. But, with respect to Ni's having "offered original documentation received from the local planning office," her authentication argument references only "the envelope in which the evidence was sent from China," see id. at 61, and makes no mention whatever of her father's affidavit. The Board understandably did not address Ni's argument that her father's affidavit would suffice to authenticate the Village Committee Notice because there was nothing to alert the Board to its existence.

In any event, the Board concluded that the Village Committee Notice *also* was unreliable and unpersuasive, and not just that it had not been authenticated. The Board did not act arbitrarily in giving little weight to the Notice. The Notice was not signed by any individual or member of the Village Committee, Ni obtained the document in support of her motion to reopen, and the stamp on the document is completely illegible. See Matter of H-L-H- & Z-Y-Z-, 25 I. & N. Dec. 209, 214 (BIA 2010) (giving less weight to

7

documents which were obtained for the purpose of the hearing, were unsigned, or which failed to even identify the authors). Moreover, the Notice does not state that Ni will be involuntarily sterilized upon her return to China for giving birth to two children in the United States. It states in an introductory paragraph that Chinese citizens who have two children "will sure be sterilized," A.R. 112, and then goes on to discuss Ni's particular situation. In discussing Chinese citizens like Ni who have two children born in the United States, the Notice is more equivocal, stating, "[n]ow that you have already had two children in the United States, you need to decide the nationality issue after the children return to China," and "[i]f you return to China and register your children's residencies, you should strictly abide by the local family planning regulations just like the local residents. There are no exceptions." Id.

Accordingly, the Notice is not entitled to much weight. We agree with the Attorney General that the "best resource," Zubeda v. Ashcroft, 333 F.3d 463, 478 (3d Cir. 2003), continues to be the 2007 Profile, which states that: "U.S. Officials in China are not aware of the alleged official policy, at the national or provincial levels, mandating sterilization of one partner of couples that have given birth to two children, at least one of whom was born abroad," A.R. 238. The Notice does not undermine the 2007 Profile, which indicates that China continues to enforce its family planning regulations but does not use measures such as involuntary sterilization on Chinese couples who return to China with two children born abroad. See Matter of H-L-H-, 25 I. & N. Dec. at 214 ("Although acknowledging that there were 'reportedly' forced sterilizations in Fujian in 2006, the State Department observes [in its 2007 Profile] that Consulate General officials

8

visiting Fujian have found that coercion through public and other pressure has been used, but they did not find any cases of physical force employed in connection with abortion or sterilization."). See also Chen, --- F.3d at ---, 2011 WL 923353, at *2 (Board's opinion in Matter of H-L-H- is comprehensive and persuasive). The 2009 Congressional-Executive Commission on China report concerns only women who have given birth to children in China, and thus is not material to Ni.

Considering the report Ni submitted by Dr. Sapio, substantial evidence supports the Board's finding that Dr. Sapio was not an expert on the reliability of the State Department's 2007 Profile. Ni failed to establish that the 2007 Profile is deficient in any way. She argues in her brief that the Board failed to consider Dr. Sapio's report, which directly contradicts the 2007 Profile, or explain why Dr. Sapio is not an expert on the reliability of the 2007 Profile, and that Dr. Sapio's affidavit is precisely the type of countervailing evidence called for by the Board in Matter of H-L-H-. Moreover, the 2009 Congressional-Executive Commission on China report should be considered the best evidence on the matter. See Petitioner's Brief, at 23, 28-33, 35 n.3. Again we disagree. The Board reasonably concluded that Dr. Sapio is not an expert on the quality and reliability of State Department reports on country conditions in China, including the 2007 Profile. Dr. Sapio's report and curriculum vitae support the Board's conclusion with respect to her lack of expertise in evaluating the methodology of the 2007 Profile. Dr. Sapio's curriculum vitae does not indicate relevant education or employment by which she would have obtained any expertise about the State Department and how it

9

prepares its reports.[1]  Moreover, contrary to Ni's argument, the Board did not create an impossibly high standard to meet in rejecting Dr. Sapio's affidavit.  It simply gave special weight to the 2007 Profile, which is based on the collective expertise and experience of the State Department.

For the foregoing reasons, we will deny the petition for review.

---

[1]  Dr. Sapio received her doctorate in History and Civilization of the Far East, and describes herself as a Chinese law scholar.  Her published articles concern corruption and economic crimes in China.