**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3202
_____

YUE XIA CHEN,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                    Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A078-746-838)
Immigration Judge:  Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 9, 2012
Before:  SLOVITER, GREENAWAY, JR. and COWEN, Circuit Judges

(Opinion filed: May 9, 2012 )
_____

OPINION
_____

PER CURIAM

Yue Xia Chen petitions for review of an order of the Board of Immigration Appeals ("BIA") denying her motion to reopen her removal proceedings. For the reasons that follow, we will deny the petition for review.

Because the parties are familiar with the background, we will present it here only briefly. Chen is a native and citizen of China who illegally entered the United States in 2001. She applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture based on her claim concerning China's coercive population control laws. In 2002, the Immigration Judge ("IJ") denied all forms of requested relief and ordered Chen's removal to China. In 2003, the BIA affirmed the IJ's decision. In 2005, this Court denied her petition for review in C.A. No. 03-4887.

In December 2010, Chen filed a motion to reopen her removal proceedings based on evidence of changed country conditions in China since the time of her original hearing. She asserted eligibility for asylum and withholding relief due to her fear of religious persecution in light of her becoming a Christian and in light of the increase in human rights abuses committed against members of unregistered churches in China. Chen stated in her affidavit that her father was severely injured in a car accident in December 2009, and that he suffered from vision loss and loss of strength on his right side. Chen became anxious about her father's health. At the suggestion of a friend, she started attending church in February 2010 and prayed for her father's well-being. About one month later, after learning that her father had recovered from his injuries, she determined to remain committed to her new faith. She was baptized on June 6, 2010.

2

Chen expressed concern about the Chinese government's suppression of Christians and feared returning to China, noting that she has a duty to spread the gospel. She submitted a letter from her cousin, who stated that she had been arrested, detained for a week, and fined by Chinese officials in connection with her participation at a house church gathering in March 2010. Although Chen feared persecution, she stated that she would only attend house churches if she returned to China. She also stated that she would never attend a church controlled by the Chinese government, because such churches are "not real spiritual churches."

On July 21, 2011, the BIA denied the motion to reopen. The BIA noted that Chen's religious conversion was a change in personal circumstances that did not constitute a change in conditions in China that would overcome the time limitations for filing a motion to reopen. Further, the BIA considered Chen's documentary evidence and concluded that, although Chen's evidence of religious conversion was new, she had not shown a relevant change in conditions in China or that she was prima facie eligible for relief.

This petition for review followed. We have jurisdiction pursuant to 8 U.S.C. § 1252 to review the BIA's denial of Chen's motion to reopen, and we apply the abuse of discretion standard to our review. See Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir. 2002). Under that standard, Chen must show that the BIA's decision was somehow arbitrary, irrational, or contrary to law. See id. Motions to reopen are reserved for only "compelling circumstances." See Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004).

There is no dispute that Chen's motion to reopen was untimely, as it was not filed with the BIA within ninety days of the BIA's 2003 decision. See 8 U.S.C. §§ 1229a(c)(7)(A) & (C)(i); 8 C.F.R. § 1003.2(c)(2). However, the ninety-day requirement does not apply to motions that rely on evidence of "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous hearing." 8 U.S.C. §§ 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). Here, Chen would have to show that she is eligible to file a second asylum application in reopened proceedings based on her new Christian faith and on changed country conditions since the time of her first asylum application. See Filja v. Gonzales, 447 F.3d 241, 252 (3d Cir. 2006) (change in country conditions is measured from time of proceedings before IJ).

Chen argues that the BIA erred in denying her motion to reopen as a motion based on a change in her personal circumstances of becoming a Christian, where her motion actually was based on a change in country conditions concerning the Chinese government's increased oppression of Christians. As the BIA noted in its decision, a showing of a change in personal circumstances is distinct from a showing of changed country conditions for purposes of excusing the untimeliness of a motion to reopen. See Zheng v. Attorney General, 549 F.3d 260, 267 (3d Cir. 2008). We have recognized that an alien who has been ordered removed can file an untimely or successive asylum application based on changed personal conditions if the alien can also show changed country conditions in the motion to reopen. See Liu v. Attorney General, 555 F.3d 145,

150 (3d Cir. 2009). Although Chen's argument suggests that the BIA precluded consideration of her motion to reopen based on her change in personal circumstances alone, we do not share that interpretation of the BIA's decision. In fact, the BIA did consider and discuss Chen's evidence concerning changed country conditions in considering the motion.

Chen contends that the BIA committed legal error in discounting Chen's cousin's letter, in which the cousin described having been arrested and detained with several others after participating in house church activities. Although the BIA questioned the evidentiary value of Chen's cousin's letter because it was both unauthenticated and uncorroborated, the BIA did not exclude the document from consideration. Rather, in considering that piece of evidence, the BIA assigned it little probative value in light of the lack of relevant detail in describing the events. For example, the BIA noted that Chen's cousin did not identify the address of the house church or the names of any other church members who were arrested or detained, and she stated only that she was "abused" while detained for one week, without explaining how, when, or by whom. We conclude that the BIA was within its discretion to find that the letter had insufficient evidentiary value to support reopening.

In addition, Chen contends that the BIA did not meaningfully consider the evidence she presented and instead "cherry picked" the record in denying her motion to reopen. As we have acknowledged, the BIA is required to consider the evidence of changed country conditions presented by a party, but it need not "parse or refute on the

record each individual … piece of evidence offered by the petitioner," and it "should provide us with more than cursory, summary or conclusory statements, so that we are able to discern its reasons for declining to afford relief to a petitioner." Zheng v. Attorney General, 549 F.3d 260, 268 (3d Cir. 2008) (quoting Wang v. BIA, 437 F.3d 270, 275 (2d Cir. 2006)).

In Chen's case, the BIA addressed the information contained in several reports from the year 2009, including the State Department Country Reports on China, the Congressional report, the China Aid Association report, as well as various media articles. The BIA noted that they show that the Chinese government "continued" its efforts to control religious groups, and that the reports cited seventy-seven cases of persecution in the whole country. The BIA also noted that the harassment typically targeted church leaders (and not mere members) in urban areas and "mega churches," as opposed to house churches in her rural home province. Chen emphasizes that, although the China Aid Association report stated that the majority of cases in 2009 were in urban areas and mega churches, the seventy-seven cases of persecution--cited by the BIA for the proposition that the cases were "infrequent"--actually involved 2,935 individuals and represented a 44.8% increase from 2008. Chen notes that the report further states that its information on religious persecution cases was not all-inclusive, and contends that the BIA failed properly to assess the evidence of increasing persecution together with the evidence of house church persecution in her home province, as detailed in her cousin's letter. We have discussed the BIA's discounting of the evidentiary value of the cousin's

6

letter above. Further, we disagree that the BIA should have placed more weight on the evidence of increased persecution of Christians where the evidence focused on church leaders in urban areas and on mega churches, given that Chen made no attempt to establish that those conditions applied to her situation.[1]

We have considered the arguments presented in Chen's brief and find them to be without merit. We discern no abuse of discretion in the BIA's determination that Chen failed to show a relevant change in country conditions as the basis for granting her motion to reopen. Accordingly, we will deny the petition for review.

---

[1] For similar reasons, we reject Chen's suggestion that this aspect of the BIA's decision implies that she must limit herself to certain places of worship to avoid persecution.

7