**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1194
_____

FANG ZHENG,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098-712-421)
Immigration Judge:  Honorable Alberto J. Riefkohl

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 18, 2014
Before:  FUENTES, COWEN and VAN ANTWERPEN, Circuit Judges

(Filed: June 18, 2014)
_____

OPINION
_____

PER CURIAM

     Fang Zheng, a native and citizen of the People's Republic of China, petitions for

review of the Board of Immigration Appeals' ("BIA") order denying her motion to

reopen removal proceedings.

I.

Zheng entered the United States without inspection through the Texas border in 2004. Zheng was detained by the Department of Homeland Security and served with a notice to appear in December 2004, charging her as removable under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). Zheng conceded the allegations in the notice to appear, and filed applications seeking asylum, withholding of removal, and relief under the Convention Against Torture. Zheng based her applications on fear of persecution due to her violation of China's coercive family planning policy. In January 2007, Zheng testified before an Immigration Judge ("IJ") in support of her application. The IJ made an adverse credibility finding, denied Zheng's applications, and ordered her removed to China.

Zheng, proceeding pro se, appealed the IJ's decision. In September 2008, the BIA agreed with the IJ's credibility determination and dismissed Zheng's appeal. Zheng did not petition for review of the BIA's decision, but she did file a timely motion to reopen. Zheng based that motion on a purported change in country conditions in China regarding family-planning policies. The BIA denied Zheng's motion in June 2009. Zheng filed a petition for review that we denied in December 2009. See Zheng v. Att'y Gen., 359 F. App'x 339 (3d Cir. 2009) (per curiam) (not precedential).

In October 2013, Zheng filed a second motion to reopen. Zheng, in order to avoid having her motion be time- and number-barred, based the motion on changed country conditions in China regarding the treatment of Christians, an issue that became relevant

2

after her recent conversion to Christianity.  The BIA denied Zheng's motion, concluding that it was primarily based on a change in personal circumstance, that is, her conversion to Christianity, and not a change in country conditions.  Additionally, the BIA concluded that Zheng failed to establish that conditions for Christians in China, particularly in Fujian Province, had worsened since her final hearing in January 2007.  Consequently, the BIA determined that Zheng did not qualify for an exception to the time and number limitation on filing a motion to reopen, and it denied the motion as untimely and number-barred.  This counseled petition for review followed.

## II.

We have jurisdiction to review the BIA's denial of the motion to reopen pursuant to INA § 242(a)(1), 8 U.S.C. § 1252(a)(1).  Our standard of review is abuse of discretion. Pllumi v. Att'y Gen., 642 F.3d 155, 158 (3d Cir. 2011).  This review is highly deferential, and we will not disturb the BIA's decision "unless it is 'arbitrary, irrational, or contrary to law.'"  Id. (quoting Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006)).  We review the BIA's legal conclusions de novo, and its factual findings relating to the motion to reopen for substantial evidence.  See Filja, 447 F.3d at 251.

## III.

Zheng conceded that her second motion to reopen was both time- and number-barred.  See INA § 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). There is no time or number limit, however, on the filing of a motion to reopen for asylum or withholding of removal "based on changed country conditions arising in the country of

nationality or the country to which removal has been ordered, if such evidence is material and was not available or would not have been discovered or presented at the previous proceeding." INA § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii).[1]

Zheng asserts in her brief that the BIA incorrectly concluded that she failed to establish a material change in country conditions because it overlooked evidence and failed to properly compare the evidence of country conditions in 2007 with the evidence of recent country conditions. See Filja, 447 F.3d at 252 (explaining that the change in country conditions is measured from the time of proceedings before IJ). Zheng submitted as evidence of changed conditions the Department of State's Human Rights Report on China for 2006, the U.S. Commission on International Religious Freedom's ("USCIRF") Annual Report for 2013, the Congressional-Executive Commission on China's Annual Report for 2012, the China Aid Association's Annual Report on Religious Persecution in China for 2012, three news articles from 2010 indicating that Christians were targeted in Fujian Province, and a letter from her aunt, which explained that she and members of her house church had been detained in Fujian Province in 2012. The BIA must consider a petitioner's evidence of changed country conditions, but it need not "parse or refute on the record each individual . . . piece of evidence offered by the petitioner." Zheng v. Att'y Gen., 549 F.3d 260, 268 (3d Cir. 2008) (quoting Wang v. BIA, 437 F.3d 270, 275 (2d Cir. 2006)). Here, the BIA adequately indicated that it considered the evidence and

_____

[1] The Government contends that the BIA's uncontested conclusion that Zheng's conversion to Christianity is a change in personal circumstances is dispositive. However, an alien may file an asylum application based on changed personal circumstances beyond the 90-day statutory period if she can also show changed country conditions. Liu v. Att'y Gen., 555 F.3d 145, 150-51 (3d Cir. 2009).

4

explained why the evidence was deemed insufficient.  See Zhu v. Att'y Gen., 744 F.3d 268, 272 (3d Cir. 2014).

According to the State Department's 2006 report, new regulations governing religious affairs became effective in China in 2005.  (Administrative Record at 76-77) (hereinafter "A.R.").  Regarding China's 10-year plan for handling and eradicating unregistered religious groups that was introduced in 2010, the BIA noted that there was little information about how the plan practically affected house church members.  Zheng contends that the China Aid report shows that two phases of the plan have already been completed.  (A.R. at 167-68).  That report states that those phases resulted in investigation of house churches and targeted suppression of church leaders, which included detainment and forced labor.  (A.R. at 168).  However, the BIA noted that USCIRF's annual report stated that religious freedom in China deteriorated "particularly" only with respect to Tibetan Buddhists and Uighur Muslims.  (A.R. at 109).  Further, the BIA determined that the detention of over a thousand Christians in 2012, (A.R. at 110, 170), was comparable to the detention of "thousands of house church members" in 2006, (A.R. at 77).  Thus, the BIA concluded that the evidence of the implementation of the 10-year plan did not establish a material change in the targeting of Christians since 2007.

Zheng asserts that the absence of specific references in the State Department's 2006 report to persecution in Fujian Province, coupled with the news reports and the letter from her aunt,[2] established a regionalized increase in the targeting of Christians in

_____

[2] Zheng contends that the BIA improperly weighed this letter.  Although the BIA's reliance on a previous adverse credibility finding in initially giving reduced weight to the

5

Fujian Province. Yet, as the BIA noted, none of the country reports included evidence of specific targeting of Christians in Fujian Province. See Zubeda v. Ashcroft, 333 F.3d 463, 478 (3d Cir. 2003) (noting that State Department reports are "'the most appropriate and perhaps the best resource'" regarding political situations in foreign countries (quoting Kazlauskas v. INS, 46 F.3d 902, 906 (9th Cir. 1995)). The BIA concluded that the instances of targeting individual house church leaders and members in Fujian Province described in the documents was not sufficient to establish a material change in conditions given the lack of evidence of specific conditions in Fujian Province in 2007. Additionally, these documents reflect a continuation of the widely varied targeting of Christians throughout China, see (A.R. at 77), and the prevalence of targeting house church leaders, rather than church members or lay persons, (A.R. at 118, 143, 197).

For the foregoing reasons, we conclude that Zheng has not shown that the BIA abused its discretion in concluding that she failed to meet her burden of establishing that conditions for Christians in Fujian Province have materially changed since the time of her hearing in 2007. Accordingly, we will deny the petition for review.

---

letter is problematic, see Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004) (holding that the BIA improperly relied on an adverse credibility determination on a religion-based claim in adjudicating a later family-planning claim); see also Liu v. Holder, 718 F.3d 706, 711-12 (7th Cir. 2013) (discussing the authentication of foreign documents), it is harmless because the BIA ultimately fully credited the contents of the letter.