**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2671
_____

NAN ZHEN HUANG,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                    Respondent
_____

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A076-089-293)
Immigration Judge: Hon. Daniel A. Meisner
_____

Argued: January 26, 2016
_____

Before: VANASKIE, SHWARTZ, and KRAUSE, Circuit Judges.

(Filed: March 30, 2016)
_____

OPINION*
_____

Gary J. Yerman, Esq. **[ARGUED]**
Yerman & Associates
225 Broadway, Suite 1700
New York, New York 10007

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Counsel for Petitioner

Jonathan A. Robbins, Esq. **[ARGUED]**
U.S. Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878
Washington, D.C. 20044

Counsel for Respondent

SHWARTZ, Circuit Judge.

Nan Zhen Huang, a native and citizen of China, petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying her motion to reopen her removal proceedings. Because the BIA acted within its discretion, we will deny the petition.

I

Huang entered the United States in 1998 without a valid entry document and, as a result, was charged as removable. In proceedings before an Immigration Judge ("IJ"), she conceded removability but applied for asylum and withholding of removal, asserting a fear of persecution based on China's family planning policies. The IJ found her not credible and denied her applications. The BIA affirmed the IJ's decision in August 2002. She then filed a motion to reopen on the same grounds, which the BIA denied in October 2002.

Huang remained in the United States despite having been ordered removed. According to her affidavit, she began attending church in 2014, was baptized soon after, and is now a devout Christian. Based on this changed personal circumstance and the

2

alleged increasingly poor treatment of Christians in China, she filed a second motion to reopen.[1]  In that motion, she for the first time she added a claim under the Convention Against Torture.  In support of her motion, she presented the U.S. State Department's 2011 and 2012 International Religious Freedom Reports, excerpts from the 2012 and 2013 Annual Reports of the Congressional-Executive Commission on China, the State Department's 2012 Country Report on Human Rights Practices in China, and the 2013 Annual Report of the United States Commission on International Religious Freedom (collectively "U.S. government reports").  In addition, she submitted the 2011, 2012, and 2013 ChinaAid Association ("ChinaAid") Annual Reports on Chinese Government Persecution of Christians and Churches in Mainland China, various media reports, a letter from her brother, a baptism certificate, a letter regarding her church attendance, a personal statement, and an asylum application.

The BIA recognized that Huang offered evidence of "some incrementally stricter enforcement of restrictions against some religious practices and churches over the last 16 years," AR 5, but concluded that the U.S. government reports did not "demonstrate a material change since the time of the respondent's hearing in 1999."  AR 4.  The BIA also noted that Huang's evidence of harassment and detention of some Christian "house" church members is indicative of a "longstanding problem" which has not materially

---

[1] In an affidavit accompanying her motion to reopen and in her appellate brief, Huang reiterated her fears about China's family planning policies, but she did not include a related claim in her motion to reopen and, in any event, represented at argument that she has abandoned the claim.  Oral Arg. Tr. at 1:20:30, Jan. 26, 2016.

changed since 1999. AR 5. Finally, the BIA found that Huang did not make a prima facie showing that she was entitled to relief. For these reasons, the BIA denied the motion to reopen. Huang petitions for review of the Board's decision.

## II

The BIA had jurisdiction to review Huang's motion to reopen under 8 C.F.R. § 1003.2. We have jurisdiction under 8 U.S.C. § 1252. We review the denial of a motion to reopen for abuse of discretion, "regardless of the underlying basis of the alien's request for relief." Pllumi v. Att'y Gen., 642 F.3d 155, 158 (3d Cir. 2011). We give "broad deference" to the BIA's ultimate decision, Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003) (internal quotation marks omitted), which we will disturb only if it is "arbitrary, irrational, or contrary to law," Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006) (internal quotation marks omitted). Where, as here, the BIA concludes that the petitioner has not established a prima facie case to reopen proceedings, we review the BIA's findings of fact under the substantial evidence standard. Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). Under this standard, we must uphold the BIA's factual findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

III

Huang does not dispute that her motion to reopen is both time- and number-barred. See 8 C.F.R. § 1003.2(c)(2) (providing that a petitioner generally may file only one motion to reopen and must do so "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened"). To overcome these limitations, Huang bears the burden of "present[ing] material evidence of changed country conditions that could not have been presented during the hearing before the IJ." Shardar v. Att'y Gen., 503 F.3d 308, 313 (3d Cir. 2007); 8 C.F.R. § 1003.2(c)(3)(ii).

The BIA has "a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim." Zheng v. Att'y Gen., 549 F.3d 260, 268 (3d Cir. 2008) (internal quotation marks and citation omitted). It is not, however, required to "parse or refute on the record each individual argument or piece of evidence offered by the petitioner," and may consider the evidence "in summary fashion without a reviewing court presuming that it has abused its discretion." Id. (internal quotations marks and citations omitted). That said, a failure to consider all the evidence the applicant offers constitutes an abuse of discretion. Id.

The BIA considered the evidence Huang presented and did not abuse its discretion in denying the motion. The BIA afforded the U.S. government reports great weight in its analysis, which accords with our view that such reports are a trustworthy source for assessing country conditions. See, e.g., Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d

5

Cir. 2004) ("[W]e have held that State Department reports may constitute 'substantial evidence' for the purposes of reviewing immigration decisions."); Zubeda v. Ashcroft, 333 F.3d 463, 477 (3d Cir. 2003) (observing that U.S. government "[c]ountry reports . . . are the most appropriate and perhaps the best resource for information on political situations in foreign nations." (internal quotation marks omitted)).

Moreover, contrary to Huang's arguments, the BIA also considered other evidence that she offered, noting that she presented research articles and media reports in addition to the U.S. government reports, and acknowledging that her evidence showed "some incrementally stricter enforcement of restrictions against some religious practices and churches over the last 16 years." AR 5. While the BIA opinion does not recite the names of the research articles to which it refers, the record discloses that the only nongovernmental research articles Huang presented come from ChinaAid, which Huang argues demonstrate a worsening of conditions since at least 2007. Huang also presented media reports that described poor treatment of Christians. Thus, the BIA's identification of these categories of documents that Huang presented and its statement that they purported to show "incrementally stricter enforcement," AR 5, demonstrates that it considered these materials.

The fact that the BIA gave more weight to the U.S. government reports than these other materials is both approved by our case law and warranted here. Insofar as the reports from the U.S. government and ChinaAid present different pictures of the country conditions for Christians in China, the BIA was well within its discretion to defer to the

6

U.S. government reports rather than the reports of an advocacy group that provides accounts and statistics without a reference to their source.[2]  Similarly, while the media reports convey a message about worsening conditions, none describe events in the province in China to which Huang has ties.  This is significant because, as the BIA noted, "the evidence indicates that the likelihood of persecution . . . varies from region to region."  AR 5.

Though Huang offers evidence of troubling conditions, the BIA had before it evidence from U.S. government reports that describe the situation as continuously poor. Thus, we cannot say that the BIA erred in concluding, based on this evidence, that Huang failed to present proof that the country conditions concerning the treatment of Christians

---

[2] The BIA also did not abuse its discretion in giving limited weight to the letter from Huang's brother, in which he claimed "attending underground church or spreading the gospels is illegal in China," AR 407, because it was "an unsworn statement from an interested witness who is not subject to cross-examination, and it appears to have been created for the purpose of litigation." AR 6; accord Chen v. Att'y Gen., 676 F.3d 112, 117 (3d Cir. 2011) (concluding that the IJ properly discounted a family member's letter regarding country conditions because the letter had not been authenticated).

in China have materially changed since her removal hearing in 1999.[3]  The BIA did not

abuse its discretion in denying the motion to reopen.[4]

IV

For the foregoing reasons, we will deny Huang's petition for review.

---

[3] We note that this Court has denied petitions for review of BIA decisions denying motions to reopen based on an alleged increase in the persecution of Christians in China, albeit in not precedential opinions, concluding that the BIA's decisions, based upon its review of the same or similar materials to those presented in this case, did not constitute an abuse of discretion.  See, e.g., Zheng v. Att'y Gen., 569 F. App'x 136, 137-38 (3d Cir. 2014) (per curiam) (reviewing period from 2007 to 2013); Zhang v. Att'y Gen., 543 F. App'x 277, 285-87 (3d Cir. 2013) (reviewing period from 2004 to 2013); Lin v. Att'y Gen., 525 F. App'x 123, 124-25 (3d Cir. 2013) (per curiam) (reviewing period from 2007 to 2012); Ouyang v. Att'y Gen., 493 F. App'x 330, 332-34 (3d Cir. 2012) (per curiam) (reviewing period from 2006 to 2011); Chen v. Att'y Gen., 479 F. App'x 440 (3d Cir. 2012) (per curiam) (reviewing period from 2002 to 2010); Zhang v. Att'y Gen., 488 F. App'x 640, 642-43 (per curiam) (3d Cir. 2012) (reviewing period from 2001 to 2011).

[4] We conclude that the BIA also did not abuse its discretion in concluding that Huang failed to carry her burden of making a prima facie showing of eligibility for relief.