[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15100
Non-Argument Calendar
_____

Agency No. A209-153-249

KESHAV BAHADUR MALLA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 3, 2019)

Before ROSENBAUM, JILL PRYOR and JULIE CARNES, Circuit Judges.

PER CURIAM:

Keshav Malla seeks review of the Board of Immigration Appeals' ("BIA")

final order affirming the Immigration Judge's ("IJ") denial of his applications for

asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").

Malla contends that the IJ erred in concluding that he failed to prove that the government of Nepal is unable or unwilling to protect him from persecution—therefore making him eligible for asylum. Malla also argues that he met the standard for withholding of removal because it is more likely than not that he will suffer persecution if he returns to Nepal. Finally, he argues that if returned to Nepal, he is more likely than not to be tortured by or with the consent of a public official and qualifies for relief under the CAT.

We deny Malla's petition because we agree with the BIA that substantial evidence supports the IJ's determination that Malla failed to show the government of Nepal is unable or unwilling to protect him. We also agree that Malla has not satisfied the standard for withholding of removal. Finally, we agree with the BIA that Malla is not entitled to CAT relief. We thus deny Malla's petition for review.

## I.

Malla, a Nepalese citizen, was a member of the Nepali Congress Party ("NCP"). In that capacity, he prepared and distributed pamphlets, organized meetings, canvassed for NCP candidates, and spoke out against the Maoist party.

2

Malla received a letter from the Maoist party demanding that he leave the NCP, support the Maoists, and pay the Maoists—and threatening him with physical violence if he did not comply. Malla was afraid, but he continued working with the NCP.

Soon after, when Malla was on his way home from an NCP meeting, four Maoists stopped him in the road. They asked Malla whether he would comply with the demands in their letter. Malla refused. The four men beat him, hitting his face with their fists and a stick. They continued until he was bleeding, then one man commanded another to shoot him.

Malla capitulated, said that he would comply with the Maoists' demands, and asked for more time. The Maoists gave Malla five days to comply and said they would kill him if he did not comply. They detained him all night, releasing him in the morning. Malla feared for his life.

In the morning, villagers took Malla to a hospital, where he filed a police report. Malla had little hope that the police would help him, though, because they rarely came to his faraway village, were afraid of the Maoists, and selectively enforced the law. The police never followed up with Malla about his report.

Malla was released from the hospital after two days. Cognizant of the Maoist's five-day warning, he decided not to return to the village. Instead, he went to his uncle's place, where he remained in hiding for roughly two weeks. Malla

went into hiding because he knew that he could not join the Maoists; he didn't agree with their party.

While he was in hiding, the Maoists went to Malla's home—where his father and children were—and asked for him. When Malla's father would not answer, the Maoists beat him, threatened his family, and said that they would shoot Malla if they found him. Malla's father told him to leave and go to a secure place.

So Malla left his uncle's house and went to Kathmandu. Even there, he did not feel safe. He knew Maoists lived everywhere in Kathmandu. When he met with NCP members in Kathmandu, they told him that he needed to be careful because he was a Maoist target. Malla was afraid. Nowhere in Nepal was safer than Kathmandu, but the Maoists had a network there. He believed that if he stayed in Nepal, he would be captured and killed.

Malla fled Nepal, eventually entering the United States near Calexico, California. Soon after, he received a notice to appear from the Department of Homeland Security ("DHS"). In the notice, DHS alleged that Malla was in the United States without authorization. That same day, an asylum officer conducted a credible fear interview with Malla. He determined that Malla had a credible fear of persecution based on his political opinion. The officer referred the case to an immigration court where Malla would be allowed to seek asylum, withholding of removal, and relief under the CAT.

4

**The Immigration Judge's Decision**

Malla appeared before an IJ to plead his case.  The IJ denied Malla's applications.  He found that Malla's evidence was not credible, but even if it was, Malla had not met his burden of proving his well-founded fear of persecution.

The IJ first pointed out that Malla's two hospital records showed inconsistent admittance dates—one on November 2, 2015; the other on November 2, 2016.  The IJ found that the two documents did "not support [Malla's] claim and cast serious doubt on [his] credibility."  Doc. 9 at 60.[1]

The IJ then noted a second inconsistency:  that Malla told his father that he had been assaulted to the point of unconsciousness, but he told the IJ that he had not been assaulted to the point of unconsciousness.  Because of these two inconsistencies, the IJ voiced "serious doubt about the credibility of the documents submitted in this case."  Doc. 9 at 61.

But even if those documents were not inconsistent, the IJ would have denied Malla's asylum application anyway for three reasons.  First, the IJ concluded that "threats, without more, do not rise to the level of persecution."  *Id.*  Second, Malla had not shown that the government was unwilling or unable to control the Maoist Party that threatened him.  The IJ looked to the State Department's 2016 Human Rights Report, which indicated that civilian authorities maintain effective control

---

[1] Citations in the form "Doc. #" refer to entries on this Court's docket.

over security forces[2] and have routinely held accountable officials and security forces accused of violating the law.  On this basis, the IJ determined that the record contained evidence that the Nepalese police protect individuals like Malla and that Malla had not shown it would be futile for him to file a police report.  Third, Malla had not shown that he was unable to relocate elsewhere within Nepal.  In particular, the IJ noted that Malla had no problems living in Kathmandu, Malla's children remain in boarding school in Nepal, and none of Malla's family members has suffered persecution since Malla left.

The IJ concluded that Malla's asylum application was frivolous based on the submission of the hospital records, which the IJ found inconsistent.  That determination, if not reversed, rendered Malla permanently ineligible to receive asylum benefits.  8 U.S.C. § 1158(d)(4)(A), (d)(6).  The IJ further concluded that because Malla had not satisfied the burden for asylum, he could not satisfy the higher threshold for withholding of removal.

**The Board of Immigration Appeals Decision**

---

[2] The State Department's 2016 Human Rights Report for Nepal does not define the phrase "security forces."  Doc. 9 at 154.  Based on the rest of the report, however, the State Department appears to use this phrase to refer generally to the police, paramilitary, intelligence, and other forces that exert power on behalf of the state.  The report identifies those forces in Nepal as including the Nepal Police, the Armed Police Force, and the Nepal Army.  Doc. 9 at 161.

Malla appealed the IJ's decision to the BIA. The BIA dismissed the appeal in part and sustained it in part.

The BIA agreed that Malla had failed to show that the government of Nepal was unable or unwilling to protect him. The BIA emphasized that although Malla had filed a police report, the police were unable to follow up on that report because Malla left the area shortly after filing it. And the BIA referenced the State Department's 2016 Human Rights Report, which showed that the government of Nepal is working to maintain control over security forces. Thus, the BIA concluded, Malla had not met his burden of proving his asylum case. The BIA agreed that because Malla did not meet the lower burden for asylum, he could not meet the more stringent standard for withholding of removal under the CAT.

The BIA disagreed, however, that Malla had filed a frivolous asylum application. Even though Malla's hospital records contained discrepancies, the BIA considered these discrepancies insufficient to conclude that he engaged in deliberate fabrication. Malla filed a timely petition for review.

## II.

We review only the BIA's decision, not the IJ's, except where the BIA expressly adopts the IJ's decision or assumes its reasoning. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). In such cases, the Court reviews both decisions.

The Court reviews legal conclusions *de novo*, *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1199 (11th Cir. 2009); it reviews factual findings under the deferential substantial evidence test, *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350-51 (11th Cir. 2009).  We do not re-weigh evidence that was before the BIA, nor do we reverse factual findings where the record might support a different conclusion.  *Id.* at 1351; *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).  Rather, we reverse only where we "find that the record not only supports reversal, but [also] compels it."  *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).  We must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) (internal quotation marks omitted).

An applicant for asylum must meet the Immigration and Nationality Act's ("INA") definition of a refugee.  INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  A refugee is a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of [his country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ."  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  The applicant has the burden of proving his refugee status under the statute.  INA § 208(b)(1)(B),

8 U.S.C. § 1158(b)(1)(B); 8 C.F.R. § 208.13(a).  He does so by showing "(1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause future persecution."  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (internal quotation marks omitted).

When alleging persecution by a private actor, an applicant for asylum must prove that his home country is unable or unwilling to protect him.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010).  An applicant's failure to report the persecution to local government authorities is generally fatal to an asylum claim.  *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007).  But that failure is excused when the applicant can establish that reporting the persecution would have been futile.  *Id.*

To establish eligibility for withholding of removal under the INA, the applicant must show that, if removed, his life or freedom will be threatened because of his race, religion, nationality, membership in a particular social group, or political opinion.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005).  He must show that it is more likely than not that he will be persecuted or tortured upon returning to his country—a "more stringent" standard than the asylum standard.  *Id.*

Finally, to establish eligibility for withholding of removal under the CAT, the applicant must show that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2).

### III.

We conclude that the BIA's determination that Malla was ineligible for asylum is supported by substantial evidence on the record as a whole.  We must therefore deny Malla's petition.  INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i).

The record does not compel the conclusion that the police were unable or unwilling to protect Malla.  This is for three reasons.  First, the State Department report indicates that the police conduct investigations and protect the rule of law. The BIA is entitled to rely "heavily" on the State Department reports.  *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004).  And although Malla submitted statements from his friends and family rebutting the claims in the State Department's 2016 Human Rights Report, the BIA is entitled to give such statements—statements of interested persons who are not subject to cross examination—little weight.  *See Matter of H-L-H- & Z-Y-Z-*, 25 I&N Dec. 209, 215 (BIA 2010).  Second, the BIA rightly determined that the police's failure to make an arrest did not show they could not protect Malla.  The failure of police to make an arrest does not prove that they did not investigate.  *Sama v. U.S. Att'y*

10

*Gen.*, 887 F.3d 1225, 1234 (11th Cir. 2018).  Third, Malla went into hiding immediately after filing his police report.  This fact provides another plausible explanation for why Malla heard nothing further from the police:  he "left the area shortly after the attack."  Doc. 9 at 4.  We may not re-weigh the evidence, and the BIA did not clearly err in its weighing of the evidence.  *Kazemzadeh*, 577 F.3d at 1351.  Because the record does not compel the conclusion that the Nepalese government was unable or unwilling to protect Malla, we affirm the BIA's denial of his asylum application.

For similar reasons, substantial evidence supports the BIA's denial of Malla's CAT claim.  "To demonstrate eligibility for CAT protection, an applicant must show that it is more likely than not that []he will be tortured in [his] home country at the hands of [his] government or that [his] government will acquiesce in the torture."  *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 438 (11th Cir. 2004) (per curiam).  Because Malla failed to demonstrate that the Nepalese government was unable or unwilling to protect him from private actors, the BIA reasonably concluded that Malla failed to demonstrate that it was more likely than not that the Nepalese government would consent to or acquiesce in his torture.  Malla thus failed to establish eligibility for CAT relief.  8 C.F.R. §§ 208.18(a)(1), 208.16(c)(2).

11

We accordingly affirm the BIA's denial of Malla's claims for asylum, withholding of removal, and CAT relief.

**PETITION DENIED.**